# THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

# J. L. SMYSER & CO.

1. COMMON CARRIERS—WAREHOUSEMEN—*what constitutes a delivery to them.* Where goods are placed in a car of a railroad company, with their assent, for the purpose of shipment, the loaded car being under the exclusive control of the company, the goods thereby pass into the possession of the company as effectually as if they had been delivered in their warehouse.

2.  There is no difference as regards the question of possession, whether the freight is received by the railroad company on the platform of their depot, or in their cars at any place on their road or side track; or whether it is placed there by their own employees or by other persons, so it is done with the assent of the company.

3.  SAME—*bill of lading not essential.*  Nor is it the mere signing of a bill of lading which transfers the possession of freight to the carrier; that is simply the evidence that he has received the possession, and the fact may as well be shown by any other legitimate testimony.

4.  SAME—*when the liability of the carrier attaches.*  The liability of the common carrier is fixed by accepting the property to be transported, and the acceptance is complete whenever the property comes into his possession with his assent.

5.  So where a car load of cotton was loaded upon a car belonging to the Illinois Central Railroad Company, and provided by the company for the purpose, upon a side track of the company, and while standing there the cotton accidentally took fire and was injured thereby, the company was held liable for the loss, although there had been no receipt or bill of lading given for the property.

6.  SAME—*how a carrier may limit his liability, and to what extent.*  A railroad company may restrict its liability for loss or injury to property placed in its charge for transportation, by special agreement, the carrier being still held responsible for gross negligence or willful misfeasance.

7.  SAME—*effect of usage in limiting liability.*  But the rule is limited to cases where there is a special contract. It is not competent to limit the liability of the carrier by merely proving a usage on his part in giving bills of lading exempting him from certain classes of losses.

APPEAL from the Superior Court of Chicago.

This was an action of assumpsit brought in the court below by Jacob L. Smyser, T. J. Tapp and Joseph Chamberlin, partners, doing business under the name and style of J. L. Smyser & Co., against the Illinois Central Railroad Company, to recover damages for an injury to twenty-nine bales of cotton at Cairo, alleged to have been in the possession of the railroad company, on the 24th of October, 1862.  The first, second and third counts in the declaration allege the receipt of the cotton by the defendant as a common carrier; the fourth and last count alleges, merely, that the defendant had possession of the

cotton for safe-keeping. Some of the counts allege, and the proof shows, that the injury to the cotton was occasioned by fire.

The facts concerning the loss, as developed by the testimony, are substantially as follows:

Williamson, Haynes & Co., commission merchants and forwarders and wharf-boat proprietors at Cairo, received the cotton from a steamboat a few days prior to the 23d of October, and piled it on the open levee in the rear of their wharf-boat.

It appears that according to the mode of doing business by the company at Cairo, when warehousemen have cotton to ship by rail, they apply to the company for the requisite number of cars, and they are sent on the side track of the company to the warehouse, and the shipper there loads the cotton upon the cars, makes out a manifest and leaves it with the agent of the company, who has the bales counted, and, if found to be correct, a bill of lading is signed, and the company send a locomotive and remove the cars thus loaded and place them in the train destined to the point to which the shipment is made.

On the morning of the 23d of October, Williamson, of the firm of Williamson, Haynes & Co., gave notice at the office or to the yard-master of the company, that he had a car load of cotton to ship, and requested a car for that purpose. A car was taken down on a side track to a point opposite to his wharf-boat, about 10 o'clock A. M., and left in charge of Williamson, Haynes & Co., and during the day they loaded the cotton into the car. The agents of the defendant were notified at their office in Cairo, that the cotton was loaded on the car, and manifests of the number of the bales and amount of charges were presented to the agents on the evening of the same day, at their office in Cairo, at the usual time of presenting them.

On the morning of the 24th of October, the cotton was partially consumed by fire, communicated to it, as was supposed, from a spark from a passing locomotive belonging to the defendant. At the time of the loss the cotton was stand-

ing on the side track belonging to the company, where it was loaded, and had not been counted, nor had any bill of lading or receipt been given for it. This action was brought by the plaintiffs, who were the owners of the cotton, to recover for the loss thus occasioned.

On the trial, the defendant offered evidence to show a usage of the railroad company's business at Cairo, of long standing, and well understood by all shippers, and particularly by Williamson, Haynes & Co., to give bills of lading exempting the company from liability for loss or damage by fire. But the plaintiffs objected to the introduction of any such evidence, and the court below sustained the objection and the evidence was excluded, the defendant excepting.

A verdict was returned for the plaintiffs for $1,732.20 damages, a new trial refused and judgment was entered upon the verdict.

The defendant thereupon took this appeal, and now insists,

*First.* That the cotton at the time of the injury thereto, was not in the possession of the appellant, either as a common carrier, or for safe-keeping, and therefor no recovery could be had.

*Second.* That the court below erred in excluding from the jury, the evidence offered by the appellant respecting the usage and custom of its business at Cairo as to the risk of loss or damage by fire.

Messrs. McALLISTER, JEWETT and JACKSON, for the appellants,

Contended there was no such acceptance of the cotton by the railroad company as would create a bailment to them as carriers, and therefore there can be no responsibility for loss. Citing Angell on the law of Carriers, Sec. 140; *Lovett* v. *Hobbs*, 2 Show. R. 127; *Leigh* v. *Smith*, 1 C. & Payne, 640.

Counsel insisted that as the doctrine is now well settled, that it is competent for a common carrier to make a special

contract or special acceptance of goods, exempting itself from responsibility, which, in the absence of such contract, would attach to it, (*New Jersey Steam Navigation Company* v. *Merchant's Bank*, 6 How. 344; Angell on Law of Carriers, Sec. 220; *Ill. Cen. R. R. Co.* v. *Morrison et al.*, 19 Ill. 136), the testimony offered to establish the usage of the company's business at Cairo in reference to the risk of loss or damage by fire, was admissible for the purpose of proving the contract in that regard, between the company and the shippers, upon the supposition that the cotton had been received by the company. *Noble* v. *Kenoway*, 2 Doug. 510; Starkie on Ev. 361; *Renner* v. *Bank of Columbia*, 9 Wheaton, 581; *Cutler* v. *Powell*, 6 Term R. 320; *Jones* v. *Fales*, 4 Mass. 252; *Halsey* v. *Brown et al.*, 3 Day, 346; *Bank of Utica* v. *Smith*, 18 Johns. 230; *Yeaton* v. *Bank of Alexander*, 5 Cranch, 49; *Gibson* v. *Culver et al.*, 17 Wend. 305; *Outwater* v. *Nelson*, 20 Barb. 29; *Loring* v. *Gurney*, 5 Pick. 14; *Morgan* v. *Richards*, 1 Browne, (Penn.) 171; *Wadsworth* v. *Alcott*, 2 Seldon, 64.

Mr. JOHN G. ROGERS, for the appellees.

The liability of the company attached as soon as the cotton was placed in their car, with their assent. It was done as a mere accessary to the carriage, and for the purpose of facilitating it. *Merriam* v. *Hartford and New H. Railroad Company*, 20 Conn. 359; Story on Bailment, Sec. 536.

The carrier is an *insurer* for the delivery of the goods intrusted to him, and liable for losses occasioned by *all causes*, except the act of God and the King's enemies, and, before 1776, without the power to limit his responsibility, even by express agreement or contract. *Fish* v. *Chapman & Ross*, 2 Kelly (Ga.). p. 358; *Hollister* v. *Nowlin*, 19 Wendell, 234.

He was allowed, in England, for a while subsequent to our revolution, to limit or modify his responsibility by *notice*, but not in the United States, in some of which he can not do it by *express agreement*, much less by *notice*. 2 Hill (Ga). 623; 2

Kelly, 351.   See also the note of Mr. Wallace to the case of *Coggs* v. *Bernard*, 1 Smith's Leading Cases, 183.

If general notice, or special acceptance, limiting or attempting to limit or modify the extraordinary liability of the common carrier, is even brought home to the employer, it does not avail.   Smith's Leading Cases, Vol. 1, 275; *Hollister* v. *Nowlin*, Supra; *Camden & Transportation Company* v. *Belknap*, 21 Wend. 355; Chitty on Carriers, p. 45, note 1; *Fisher* v. *Chapman*, Supra; *Western Transportation Company* v. *Newhall et al.*, 24 Ill. 466.

Nor is he released where there is a loss or destruction by accidental fire, wholly without negligence on his part.   Story on Bailm. Sec. 511 and 528; *Porter* v. *Chicago & Rock Island Railroad Company*, 20 Ill. 412; Chitty on Carriers, 39; *Parker* v. *Flagg*, 26 Maine, 191; *Miller* v. *Steam Navigation Company*, 13 Barbour, 361; *Gilman* v. *Carman*, 1 Smedes & Marshall, 279; *Woods* v. *Devin*, 13 Ill. 749; *Swindler* v. *Hilliard*, 2 Richardson, (So. Car.) 286.

The excluded testimony tended only to show a usage or custom, which, at most, would only amount to *notice*—not a *contract*, and was not admissible.   *Wadsworth* v. *Allcott*, 2 Gild. 72; *Schooner Reeside*, 2 Sumn. 567, per Mr. Justice STORY; 1 Greenleaf Ev. Sec. 293, note 3; 2 *Ib.* Sec. 251. Nothing short of an express stipulation could discharge the liability of the company.   *New Jersey Steam Navigation Company* v. *The Merchants' Bank*, 6 Howard, 381; *Hollister* v. *Nowlin*, 19 Wend. 234.

Mr. GEORGE C. CAMPBELL, for the appellants, argued in reply.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is insisted in favor of a reversal in this case, that the cotton, at the time of its destruction, was not in the possession

of the railroad company, either as a common carrier or for safe-keeping; and that the court below erred in rejecting the evidence of the usage of the company in their business at Cairo. It appears, that according to the mode in which this company does business at Cairo, when warehousemen have cotton to ship by rail, they apply to the company for the requisite number of cars, and they are sent on the side track of the company to the warehouse, and the shipper there loads the cotton upon the cars, makes out a manifest, and leaves it with the agent of the company, who has the bales counted, and if found to be correct, a bill of lading is signed, and the company send a locomotive and remove the cars thus loaded and place them in the train destined for the point to which the shipment is made.

The side track and the cars belong to the company, and are under their exclusive control. And there is no question, that the company placed this car at a point opposite the wharf-boat on which the cotton was stored, for the express purpose of having it transferred from the boat to the car, that they might transport it to the point desired by the shipper. The company had unquestionably the exclusive use and control of their road, side tracks, and freight cars; no use could be made of them without the consent of the company. So long as a car remained on their road, or side track, it was under their control and, necessarily, in their possession. They had the right to permit their cars to stand at the point at which this one was placed. The company, at any moment, at least after the car was loaded, had the unquestioned right to remove it to any other part of their road, but the commission merchant had no such right, even if he had possessed the means. He simply had the right to load the cotton on the car.

The wharf-boat, on the contrary, with its contents, was in the possession of the commission men, and the cotton so continued until it was placed in the car. It then passed into the possession of the company as effectually as if it had been delivered in their warehouse. They substituted their car for their ware-

house, no doubt for the mutual convenience of all parties. And this too with the assent of the company, to promote their interest, in the prosecution of the business for which it was created.

If this was a box car the company had the right as soon as the cotton was placed in it, to have closed and locked it. Or, if an open car, they had an equal right to have secured the cotton, and any person interfering with it would have been a trespasser, and the company could have recovered damages for any injury thus perpetrated. No difference is perceived in receiving freight on the platform of their depot, and into their cars, at any place on their road or side track. Or whether it is placed there by their own employees or by other persons, so it is done with the assent of the company.

It is not the mere signing a bill of lading which transfers the possession of freight to the company, but it is the evidence that they have received possession. Their possession may be shown by any other legitimate evidence. The liability of the common carrier is fixed by accepting the property to be transported. If, however, goods are placed on his cart, boat or car, without his knowledge or acceptance, or that of his agent, he is not liable. Angell on the Law of Carriers, Sec. 140. If the owner or person having the custody of the goods to be shipped, never parts with their possession, or does not place them under the control of the carrier, there is no bailment, and consequently no liability incurred. *Ibid.* But in this case the company, by their acts, accepted the trust. The cotton was not placed in the car without their knowledge, but it was with their express assent. Had the employees of Williamson, Haynes & Co., placed the cotton on the platform of the depot, with the assent of the company, to be transported, no one would doubt their liability, and yet in principle no difference is perceived.

According to the current of modern decisions, it is competent for a common carrier, by rail, to limit his common law liability, by express contract. It was held in the case of the *Illinois Central Railroad Company* v. *Morrison,* 19 Ill. 136,

24—38TH ILL.

after a careful review of the adjudged cases, that railroad companies could restrict their liability by special agreement, they still being held responsible for gross negligence or willful misfeasance. But in that case the rule was restricted to a special contract, nor are we aware that any well considered case has carried it farther. And we have no disposition to do so unless compelled by authority. But this rule of law can have no application to this case, because there is no pretense that there was any special agreement, restricting the liability of this company. Their liability can not be limited by showing that it was the usage of the road to embrace in all bills of lading for the shipment of cotton, that the company should not be liable for losses by fire. There was an offer to prove that such had been the usage of the company, and that it was known to shippers. If this had appeared it would not have availed, as nothing but a special agreement could have that effect. *Western Trans. Company* v. *Newhall*, 24 Ill. 466. Even to permit it to the extent announced in the case referred to, is a relaxation of the ancient common law, which prevented any restriction of the carrier's liability even by contract.

But to merely show a loose usage for an indefinite period, limited to a few persons in one particular locality to change the carrier's duty, is not sanctioned by either the British or American decisions.

The question of diligence is one of fact, for determination by the jury. And in this case it was fairly presented for their consideration, and we think the evidence warranted the conclusion at which they arrived. Upon a careful examination of this record, we are unable to perceive any error for which the judgment should be reversed, and it must be affirmed.

*Judgment affirmed.*