CHARLES H. LORD & another *vs.* OGDEN E. EDWARDS
& another.

Suffolk.     January 8, 9, 1889. — February 27, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract of Sale — Warranty — Construction.*

A letter from a seller to a buyer containing the terms of a sale, recited: " We
have made sale to you of 1200 tons extra M. sugars, about No. 9 D. S. in color,
at 10.10 per ton f. o. b., and we understand it is your intention to load same
on the Republic on her arrival at M. . . . It is further understood that the
sugar is sold on a basis of 88° pol'r with 3d. per cwt. per degree downwards
and fractions of degree in proportion. The sugars to be thoroughly sampled
and tested on arrival." *Held,* that the warranty was of the quality of the
sugar as it was upon its delivery on board the ship in M., and not at the port
of destination after its arrival there.

CONTRACT to recover for a breach of a warranty of the test
and color of certain sugar sold by the defendants to the plain-
tiffs. At the trial in this court, before *C. Allen,* J., the jury
returned a verdict for the defendants ; and the plaintiffs alleged
exceptions. The material facts appear in the opinion.

*C. T. Russell, Jr.,* for the plaintiffs.

*L. S. Dabney,* for the defendants.

MORTON, C. J. The contract between the parties is in the
form of a letter, written at Boston by the agents of the defend-
ants, addressed to the plaintiffs. The material parts of it are
as follows : " We have made sale to you of 1200 tons extra
Manila sugars, about No. 9 D. S. in color, at 10.10 per ton
f. o. b., and we understand it is your intention to load same on
the Republic on her arrival at Manila. . . . It is further un-
derstood that the sugar is sold on a basis of 88° pol'r with 3d.
per cwt. per degree downward and fractions of degree in pro-
portion. The sugars to be thoroughly sampled and tested on
arrival. In due season we shall expect satisfactory bankers'
credits at six months to be forwarded to our friends at Manila
by cable." Under this contract, the defendants delivered free
on board the Republic, at Manila, twelve hundred tons of sugar,
which, as the jury have found, was equal to the test and standard

required in the contract, if that test and standard are to be applied to the sugar at Manila. But, upon the arrival of the ship in New York, the sugar was sampled and tested, and it was found that it failed to test 88 degrees by the polariscope, and was not equal in color to extra Manila sugar about No. 9, Dutch standard.

There was evidence tending to show that most cargoes of sugar coming from Manila lose some weight during the voyage, and are more or less sweated, even if there is no actual contact with salt water, and that in this case the sugars were sweated and some salt water penetrated through the deck of the ship, and that they were exposed to wet when discharged, and thereby lost in strength and color. The only question now presented to us is whether the standard guaranteed in the contract is the standard and quality of the sugar as it was upon its delivery on board the ship in Manila, or the standard in New York after its arrival. The question is not free from difficulty, but upon the whole we are of opinion that, as was ruled at the trial, the defendants fulfilled their contract when they delivered at Manila sugar of the color and strength specified therein, and that they are not responsible for any risks of the voyage which caused a deterioration of the sugar.

Both parties agree, and it is clear, that upon the delivery of the sugar on board the ship, and the payment for it, the property in it passed to the plaintiffs. It is equally clear, that the defendants did not assume any risks of damage to the goods by the perils of the sea. It was a sale of certain goods of a specified quality at Manila, and not at New York. The nature and scope of the transaction being that of a completed sale of goods, which were to be exposed to the perils of the sea, and other risks of a long sea voyage, and which were taken entirely out of the custody or oversight of the sellers, it is not to be presumed that they assumed any risks of its future condition, unless there be an express and clear stipulation to that effect.

The plaintiffs contend that such a stipulation is implied in the words, " the sugars to be thoroughly sampled and tested on arrival." This is certainly not an express stipulation that the sugar upon arrival in New York shall be of a specified quality. It cannot be claimed under this clause, that, if the goods were

damaged by a peril of the sea, the defendants would be responsible. It does not import a warranty against damage by perils of the sea, and we cannot see that it necessarily or reasonably imports a warranty against damage from wet weather or from sweating, or other causes of deterioration operating during a long voyage. The clause in question seems to be an independent clause, inserted probably because it was thought important or desirable that the parties should know the condition of the sugar upon its arrival. Such knowledge might be important in case of any controversy as to the condition of the sugar when shipped. But whatever the reasons for its insertion, we cannot reasonably construe it as importing a stipulation which is contrary to the spirit and scope of the contract, which contemplated a completed sale and delivery at Manila.

*Exceptions overruled.*