RAILWAY COMPANY *v.* MURPHY.

Opiniod delivered March 16, 1895.

1. *Carrier—When liability commences.*
    The liability of a carrier commences when it receives the entire custody of goods for immediate transportation.

2. *Delivery to carrier—When sufficient.*
    Where the custom of a railway company was, when requested, to place an empty car upon its side-track at a flag station to be loaded with cotton, and, when loaded, to remove the car, and subsequently issue a receipt and bill of lading, the railway company is liable for the loss of cotton so loaded, if notice had been given by the shipper of its destination, and that it was ready for removal, and nothing remained to be done by him before

```
60   333
60   556
60   333
62   208
60   333
65   320
60   333
f69  157
69   317

60   333
f79  356
```

shipment, although no receipt or bill of lading had been given for the property, and the name of the consignee had not been furnished to the carrier.

3. *Evidence—Book entries.*

Book entries made in the course of business by a person since deceased are admissible on behalf of his executrix where it is shown that the book was correctly kept, that the entries were in his handwriting, and that they were made contemporaneously with the facts recorded.

4. *Evidence—Objection should be specific.*

An objection to the admission of book entries on the ground that they were not made contemporaneously with the facts recorded will not be considered on appeal where such objection was not made specifically in the court below.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

Action by Mary K. Murphy, as executrix, against the St. Louis, Iron Mountain & Southern Railway Co. The facts are stated in the opinion.

*Dodge & Johnson* for appellant.

1. Before a common carrier's liability to a shipper, as such, begins, the goods shipped must have been first delivered to the carrier, and received into its actual care and custody, free from all control of the shipper, and not until then can a common carrier be held liable for the same, under its duties as such. And should a carrier receive goods from a shipper with no information or directions as to whom to transport and deliver the same, a common carrier's liability as such would not attach or commence until the shipping order was complete, by the giving of the name of the consignee and the place of destination ; and until such directions were given and received by the carrier, its liability would be that only of a warehouseman, provided it had taken the goods into its exclusive custody and control. Hutch. on Car. secs. 82–94 ; 56 Ark. 271 ; 42 *id.* 203 ; 22 S. W. 195 ; 53 Fed. 137 ; *Ib.* 939 ; 35 A. & E. R. Cas. 379 ; 40 *id.* 25 ;

Hutch. Car. secs. 82–99; 16 A. & E. R. Cas. 99; Schouler, Bailments, 363; 26 S. W. 313; 38 Ill. 354; 87 Am. Dec. 303. No shipping orders having been given, leaving something yet to be done by the shipper before the goods could be transported, the defendant's liability, if any, was that of a warehouseman only, and it was only responsible for loss caused by negligence. 100 Mass. 455; 39 Ill. 335; 7 Mich. 515; 106 Mass. 467; 8 So. 687; 42 Ark. 203. To have issued a receipt for the cotton before *actual* delivery would have been a violation of Acts 1887, p. 84, sec. 1.

2. The proximate cause of the loss was the act of the tramp, while the car was unfastened, unguarded and unprotected. The delay was not the cause of the burning, but the act of the tramp made possible by the neglect of plaintiff. 56 Ark. 288; 55 Ark. 521; 23 S. W. 1100; 139 U. S. 237.

3. The court erred in admitting the testimony of McNally as to the entries in Murphy's cotton book. (1) Because incompetent, Const. Ark. sec. 2, schedule, p. 132; 48 Ark. 133. (2) The written statement was hearsay. (3) Better evidence was obtainable, and no foundation was laid. 57 Ark. 415; 151 U. S. 155–6.

4. The witness McNally was asked a leading question. Mansf. Dig. sec. 2900.

*H. King White, W. T. Woolridge* and *Dan W. Jones & McCain* for appellee.

1. This case is easily distinguishable from that where a manufacturer has a spur track run out to his factory and upon his own premises. In such case the car passes beyond the control of the railroad. In this case the car is in the possession and under the control of the company, and a loading in the company's car *placed there for that purpose* is a delivery to the carrier. 73 Ala. 396; Hutch. on Car. sec. 90. A local custom amounts

to an implied agreement. *Ib.* All the cases cited by appellant were cases where the goods had not been loaded in the carrier's vehicle.

2. The name of the consignee is not a prerequisite to delivery. When the shipper is ready for the goods to move, and indicates this to the carrier, the common law liability of the carrier attaches. 31 Conn. 281; 20 Conn. 354; 87 Am. Dec. 303; 31 N. E. 853; 35 *id.* 296; 23 N. Y. 231; 68 Hun, 598; 43 Ind. 370; 20 S. W. 846; 71 Wis. 372.

3. The books of the intestate were properly admitted as evidence as to the weight of the cotton. 1 Gr. Ev. secs. 117, 119 and notes.

4. The so-called *leading* question asked McNally was a mere recapitulation, which is allowable. 1 Gr. Ev. sec. 434. But the answer was immaterial and harmless.

WOOD, J. This suit was to recover of appellant company for loss of cotton which, it is alleged in the complaint, had been delivered to appellant as a common carrier for immediate transportation. The answer of appellant denies that the cotton was delivered to or received by it, or that it agreed to transport the same. There was a verdict and a judgment for $1,016.15.

The proof, so far as it may be necessary to state it in order to present the rulings of the lower court and of this court, is substantially as follows: John P. Murphy, plaintiff, lived and did business as a merchant and planter at Fairfield on appellant's railway. Fairfield had been a regular station, with an agent located there, from 1884 to the close of 1887, when the agent was withdrawn, and since which time there had been no agent there. It was a post-office, and passenger trains stopped there regularly. Freight trains stopped occasionally, whenever freight was to be delivered to the com-

pany for shipment, or when freight was to be received. The freight trains were stopped by flagging them down. Even when there was a regular agent at Fairfield, freight trains did not stop unless they were flagged or had freight to unload. The company had its switch and platform on its own premises for the purpose of receiving and shipping freight. Freight shipped there had to be prepaid. For years John P. Murphy had been shipping cotton from Fairfield. The witness, in answer to the question, "What was the custom of the defendant company in the acceptance of freight for transportation?" said: "When we had cotton to ship, we notified the company's agent at Noble Lake or Pine Bluff, and they would lay off a car at the switch. We would load the car, and notify the same agent that we had finished loading it, and then they would move the car. The conductor would come along, and give us a receipt for the cotton, and we would carry the receipt to the agent at Pine Bluff, and he would give us a bill of lading." The witness further stated: "The conductor would take the car, and give us a receipt for it. He would check the cotton before he gave a receipt. They had a blank form which I would fill out, and the conductor would sign. I had such a receipt filled out from Tuesday, when the car was loaded, up to the time it was burned." In the present instance the car was ordered when the cotton was ready for shipment. The conductor laid it off at the switch on Saturday. It was loaded with the twenty-five bales of cotton by John P. Murphy on the Monday following, and on Tuesday the following letter was sent to the agent at Pine Bluff:

"FAIRFIELD, Nov. 25, 1891.

Mr. Reinach, Agent, Pine Bluff.

Dear Sir:—Have car loaded with cotton on switch here for New Orleans. Please have moved as soon as possible.

Yours truly,   JOHN P. MURPHY, per C. McN."

This letter was received by the agent at Pine Bluff on the morning of the day after it was written, and he immediately telegraphed the trainmaster at Little Rock that the car was ready to be moved. A book was identified as the cotton book kept by John P. Murphy, the entries in his handwriting showing the weights, marks of the cotton, names of consignor and consignee and date of shipment, and the witness testified his belief as to its correctness. The book was admitted in evidence over the objection of the defendant. The cotton was set fire to and destroyed by a tramp on the night of the 27th of November, 1891.

The dominant question in the case, as presented by the pleadings, the proof, and the instructions, is, *was there a delivery ?*

1. When liability of carrier commences.

When the shipper surrenders the entire custody of his goods to the carrier for immediate transportation, and the carrier so accepts them, *eo instanti* the liability of the common carrier commences. When this occurs, the delivery is complete, and it matters not how long, or for what cause, the carrier may delay putting the goods *in transitu;* if a loss is sustained, not occasioned by the act of God or the public enemy, the carrier is responsible. But, on the contrary, as there is no divided duty of safe keeping, and no apportionment, in the event of a loss, between the owner and the carrier, the surrender of control over the goods by the shipper must be such as to give the carrier the unqualified right to put at once *in itinere*, and the carrier must have received them for that purpose. So that, when goods are delivered to the carrier that are not yet ready for shipment, awaiting further orders from the owner, or the happening of some contingency or compliance with some condition before they are ready to be moved, the liability of the carrier in the meanwhile can be no greater than that of an ordinary depositary or bailee. These general principles are rec-

ognized by all the authorities. Hutch. on Car. secs. 82, 88, 89, 94; Angell on Car. secs. 129–131; 2 Rorer on Railroads, 1279; 2 Redfield on Railways, 67, *et seq.; L. R. & F. S. Railway* v. *Hunter*, 42 Ark. 203; *O'Neill* v. *N. Y. Cent. etc. R. Co.* 60 N. Y. 138; *Rogers* v. *Wheeler*, 52 N. Y. 262; Story on Bailments, sec. 532; *Wells* v. *Railroad Co.* 6 Jones (N. C.), 47.

But the statement of the law is much easier than its application to the facts of each particular case. As Mr. Hutchinson says: "It frequently becomes a question of the greatest importance and of great nicety to determine at what instant of time the delivery becomes complete." Hutch. on Car. sec. 94. The true legal test of the common carrier's liability, then, is a complete delivery. The time, place and manner of such delivery, to make it complete, may depend upon the conventional arrangement between the parties. But, in the absence of any express stipulation, the carrier may as effectually bind himself by a uniform and usual course of business sufficiently long continued to have become an established usage. Hutchinson on Car. secs. 90, 93; 2 Rorer on Railroads, 1279; Chitty on Car. * 27, note; *Montgomery etc. Ry. Co.* v. *Kolb*, 73 Ala. 396; *Merriam* v. *Hartford etc. R. Co.* 20 Conn. 354; Story on Bail. sec. 532.

2. When delivery to carrier sufficient.

Now, recurring to the facts of this case, it appears that the shipper, Murphy, had done all that was required of him, according to his particular course of dealing with the carrier, to further the shipment of his cotton. He had called for a car when his cotton was ready for transportation. The company had complied with his request by placing its car upon its own switch to be loaded. Murphy had loaded it, closed it, filled out the blank form of receipt to be signed by the conductor, and had notified the agent that the cotton was loaded and ready for shipment, giving the place of destination. He

had flagged every passing freight, and requested removal. He had done, it seems, all in his power, and all that the company required of him before shipment. What remained was exclusively the work of the carrier. It appears that the conductor was to come along, take the car, check the cotton, and issue the receipt. The car was to be moved before the consignor presented his receipt to the agent at Pine Bluff, and before the bill of lading was issued. The moving of the car, after it was loaded and closed, awaited solely the convenience of the carrier. So far as furnishing the name of the consignee and the place of destination is concerned, the proof shows that this was not expected or required by the company before it placed the cotton *in transitu*, its custom being to move the car, and then issue its bill of lading. After starting the cotton upon its journey, the carrier certainly could not be allowed to relieve himself of liability by showing that he had not been furnished with name of consignee, description of goods or place of delivery.

We have examined the cases cited by counsel for appellant on the question of delivery, and they are clearly distinguishable in their facts from the facts presented by this record. These cases are in perfect accord with the legal principles we have announced concerning delivery.

In an Illinois case, cited by counsel for appellee, it was the course of business for a railroad company, when required to do so, to send its cars upon a side track at the place of shipment, and the shipper there loaded the cotton upon the cars, made out a manifest, and left it with the agent of the company, who counted the bales, and, if found correct, issued a bill of lading. The company sent its locomotive, and removed the cars thus loaded, placing them in a train destined to the point of shipment. The manifest was presented to the agent,

but the number of bales had not been counted, and no receipt or bill of lading had been given. The cotton was partially consumed by fire, while standing upon the company's side track. No difference is perceived between the facts of that case and the one at bar that should vary the legal principle controlling both. The fact that in the Illinois case the cotton was destroyed at a regular station, with the agent always present, can make no difference, nor the fact that a manifest was made out and left with the agent; for in that case the Supreme Court said: "No difference is perceived in receiving freight on the platform of their depot, and into their cars at any place on their road or side track, or whether it is placed there by their own employees or by other persons, so it is done with the assent of the company." No significance can be attached to the fact that a manifest was filed with the agent in that case showing description of goods, name of consignee and shipping directions. The cotton had not been counted or receipted for (same as in the case at bar) by agents of the company. But shipping directions had been given in the case at bar, so far as the place of destination was concerned, as appears from the letter to the agent at Pine Bluff. Moreover, it was distinctly shown that the name of consignee was not required before the carrier accepted the cotton for transportation. It was put *in transitu* before issuing its bill of lading. The company was held liable as a common carrier in the Illinois case (*Ill. Cent. R. Co.* v. *Smyser,* 38 Ill. 354); and we consider that conclusion sound, and entirely applicable to the case under consideration. See also the following: *London etc. Fire Ins. Co.* v. *Rome etc. R. Co.* 75 Hun, 598; *Evansville etc. R. Co.* v. *Keith,* (Ind.) 35 N. E. 296 (strong case, supporting the view announced); *Wilson* v. *Ry. Co.* 40 A. & E. R. Cases, 25; *Kansas City etc. R. Co.* v. *Lilly,* 45 *do.* 379, cited in appellant's brief as tending to support the above doctrine.

**3. Admissi-**
**bility of book**
**entries.**

The only remaining question necessary to consider is as to the admission of the cotton book of John P. Murphy in evidence. The entries in the cotton book showing the weights, marks, names of consignor and consignee and date of shipment, were clearly competent and relevant to the issue. 1 Greenleaf, Ev. sec. 117, 119, notes; *Railway Company* v. *Henderson*, 57 Ark. 402.

**4. Objection**
**to evidence**
**should be**
**specific.**

The court, however, before allowing the entries read, should have required a showing that the book was correctly kept, and that the entries were contemporaneous with the facts recorded. *Henderson* v. *Ry. Co.* 57 Ark. 402. The suit was progressing in the name of the executrix, and therefore it must be taken that proof of the death of Murphy had already been made. The appellee did show that the book was correctly kept, and that the entries were in the hand-writing of J. P. Murphy, but failed to show that the entries were contemporaneous. Appellant, however, made no specific objection to the introduction of the book on that account, and we think he must be held to have waived that point. *Rogers* v. *State*, *ante* p. 76; *Vaughan* v. *State*, 58 Ark. 353. The laying of the foundation was preliminary, and, had the court's attention been directed specifically to this particular point, it doubtless would have required the proper showing, or excluded the evidence.

The court's charge to the jury on the question of delivery was in keeping with the views we have expressed, and, there being no prejudicial error in its ruling upon any other question raised, its judgment must be affirmed.

So ordered.