TATE & COMPANY *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD
COMPANY.

1. RAILROADS.   *Contract of carriage.   Essentials thereof.   Bill of lading.*
   While the issuance of a bill of lading is not essential to a contract
   of carriage, the doing of the several acts, which entitle the shipper
   to one are necessary to make a common carrier responsible for the
   safety of the goods.

2. SAME.   *Delivery.*
   The mere loading of cotton by a shipper on a car set out for such
   use at a siding where the railroad company has no station-house
   or agent, is not such a delivery, either actual or constructive, as
   will impose liability on the company for the loss of the cotton by
   fire at the siding, several hours before the time for the arrival of
   the train, which in the regular course of business would have
   transported it to destination.

3. SAME.   *Knowledge of shipment.   Acceptance of goods.*
   Without knowledge of the shipment there can be no binding acceptance by a carrier of goods for carriage, and where the custom of a
   shipper was to load cotton on empty cars, set out for such use at a
   siding, where the railroad company had no station-house or agent,
   and to flag the company's local freight train and procure the conductor's signature to his loading account, the mere loading of
   cotton on one of such cars, in the absence and without the knowl-

edge of any representative of the company, does not subject it to liability when the cotton is destroyed by fire several hours before the time for the arrival of such train.

FROM the circuit court of Tunica county.

HON. FRANK E. LARKIN, Judge.

The opinion states the facts of the case.

*F. R. Montgomevy, Jr.*, for appellant.

This case involves the single question, whether or not under the facts in proof the cotton, when it was burned, was in the possession of the defendant, or still in the plaintiff's possession. On the facts there is little or no conflict, and I submit that they show not only that the defendant was not entitled to the peremptory instruction, but that the plaintiffs were themselves entitled to a peremptory instruction if they had asked it. While conceding the proposition that there must be a delivery to, and an acceptance of, freight by the carrier, still the acceptance may be either actual or constructive. If it is the custom that the goods are to be deposited at a particular place, without express notice, then I submit that such deposit at such place is, in law, a delivery, and acceptance is implied from the custom of the company. *Railroad Co.* v. *Meridian*, 52 Am. Dec., 344; *Bowie* v. *B. & O. R. R. Co.*, 1 McArthur, 94; *Southern Express Co.* v. *Newby*, 91 Am. Dec., 783; Story on Bailments, 536.

In 5 Am. & Eng. Enc. L., 183, it is said that it is the duty of every common carrier to accept for transportation goods tendered it, etc., and an acceptance will therefore be implied upon proof of proper tender; and I submit that this is the universal rule, and supported by the authorities above cited, and many others, including those cited by note to this paragraph. What, then, is a delivery to a carrier?

That a bill of lading is not necessary to charge the defendant company as carrier, I submit is conclusively settled. 5 Am. & Eng. Enc. L., 187; and note with cases cited, in which it is

announced that the bill of lading is a mere incident to the transaction.

Where it is, as in this case, shown to be the custom of the company and the shippers at a flag station to ship cotton by loading it on the car on the side-track, put there for the express purpose, by the company, of being loaded by the particular shipper with cotton, when, under these circumstances, the cotton has been loaded on the car, the loading completed, and the car closed with such fastenings as are provided by the company attached to the car, then, without further action on the part of the shipper, the cotton passes into the possession of the railroad company as a common carrier, and it is then liable for a loss by fire before shipment.

In Louisiana it has been held that, when cotton is placed on a platform at a flag station for shipment, that the placing of it there by the shipper is a delivery to the company. *Meyer* v. *V., S. & P. R. R. Co.*, 17 Am. St. Rep., 408; 5 Am. & Eng. Enc. L., 183, and note.

In Arkansas it is held that, where the custom at a flag station was that the shipper notified the conductor of a passing train, and he, the conductor, put in a car for the reception of cotton and gave him a blank receipt, which the shipper was to fill out, and, when the car was loaded, to flag the train and have the car taken out and receipt signed by the conductor, and shipper to take the receipt to the agent at a near-by depot and obtain a bill of lading, that, when the car was so loaded and the agent notified, the cotton was then in the possession of the carrier, even though no train had taken it and the receipt had not been signed.

I submit that the Arkansas case is directly in point, because, in the case at bar, the only thing which had not been done which was done in the Arkansas case was that the agent at the nearest depot had not been notified, and the testimony in the case at bar shows that it was not the custom at Clack's station to notify any agent, but that all that was left for the shipper

to do, after loading and closing the cars, was to flag a passing freight train, going in the direction he desired to ship, and have the conductor sign the bill of lading and take out the car. That was the invariable and unbroken custom.    See *Railway Co.* v. *Murphey*, 46 Am. St. Rep., 202.

The supreme court of Mississippi has had this question almost directly before them in the case of *Kansas City, etc., R. R. Co.* v. *Lilly*, reported in 8 South. Rep., 644. In that case the cotton was deposited at a flag station near the sidetrack, and was burned while lying there on the ground, and our supreme court said that this was no delivery to the company as a carrier, but I submit that the reason given for that decision by Mr. Justice Cooper are pursuasive of the position contended for by us in the case at bar, for the court says: "It is clearly shown that Bells is a mere switch, and there is neither agent, station or platform, and that in all instances where shipments have been made it has been by loading upon the cars of the company, placed by them on the switch for the receipt of freight.    Under such circumstances it cannot be held that depositing cotton near the track was a delivery to the company."

Assuredly not, but if the cotton had been placed in the cars put there by the company for the reception thereof, does not the court intimate most strongly in that case, that this would have been all that was necessary to constitute a delivery to the company and to charge them as common carriers.    I submit there is no other way to understand this decision, and the court does not intimate that any other thing would have been necessary to charge the company as carrier except that the cotton should have been so loaded.    This was evidently the construction put upon this decision of our supreme court by the supreme court of Arkansas, in the case of *Railway Co.* v. *Murphey*, above cited, for the case of *Kansas City, etc., R. R. Co.* v. *Lilly*, is cited as authority for the position announced by the Arkansas supreme court in the case just mentioned.

It is there held that where a car is placed on a sidetrack for the purpose of receiving cotton for shipment, and is loaded by the shipper with cotton it is then in the possession of the railroad company as a common carrier, even though no bill of lading has issued and no notice been given, and they are liable for loss by fire. *Illinois, etc., R. R. Co.* v. *Smyser*, 87 Am. Dec., 301. I submit that the rule announced in this Illinois case is the true rule according to the weight of authorities, and it has been cited and approved in many other cases, among others the supreme court of Arkansas in the case of *Railway Co.* v. *Murphey*, and is cited by the Am. & Eng. Enc. L., as authority for the position quoted above, and by the other courts in the cases cited by me in the first part of this brief or most of them.

The sidetrack at Clacks is the property of the railroad company, over which they have exclusive control, the car belonged to them, was placed upon the sidetrack for the express purpose of loading cotton in it; it was provided with fasteners, which were used by the shipper and the car closed as well as it could be, and nothing remained to be done so far as the shipment was concerned, except to flag the passing freight and have the conductor thereof take the car and sign the bill of lading.

No freight train had passed before the fire, and this fact is proven by the defendant's own witnesses, who testify that the local freight passed north on the evening this car was loaded, before sundown, and the proof shows that the car was not loaded until after sundown, so that everything was done which could have been done, and the signing of the bill of lading was a mere incident, and not necessary to charge the carrier.

The case of *R. R. Co.* v. *Hodde*, 42 Tex., 467, cited by appellee's counsel expressly recognizes the rule that cotton loaded in the car is in the possession of the carrier, if there is a regulation of the company that it shall be so, as in the case at bar. To the same effect is *Truax* v. *R. R. Co.*, 3 Houst. (Del.), 33.

*J. M. Dickinson* and *Mayes & Harris*, for appellee.

The contention on the part of the appellee is that under the facts as disclosed there had been no delivery to the railroad company; that the cotton at the time of the destruction was still in the custody and in the control of the shipper, and that the railroad company was not liable, either as common carrier or as warehouseman; that the cotton was neither within the custody or control of the railroad company, and under the undisputed facts as to the existing custom, would not be until a bill of lading had been signed, the undisputed facts showing that a car was not received by the railraad company until a bill of lading had been actually signed and the cotton receipted for. The universal and well-settled rule is that the liability as carrier does not attach until the goods are in the exclusive control of the carrier. We do not insist that the issuance of a bill of lading would be necessary in all cases to fix liability as carrier, but in those cases where the issuance of a bill of lading is held not to be necessary to fix the liability, some custom on the part of the company to receive goods without the issuance of the bill of lading has been established, or some act done on the part of the company whereby it assumes liability by accepting the goods for immediate shipment, relieving the shipper of any responsibility or control over the same.

In the case at bar it is shown by the uncontroverted testimony that no cotton was received by the company in any case until a bill of lading had been signed. Not only this. The car was placed on the track for the convenience of the shipper, who loaded it at his convenience, and the railroad company was notified by the flagging of a train that the car was ready for shipment. This was the invariable custom. Receiving this notification to stop the train the bills of lading were signed, the cotton receipted for, and taken by the passing train and carried to its destination. No train stopped to take the cotton until flagged by the shipper, and no train would then take the car until a bill of lading had been signed. These facts make it perfectly

clear that there was in this case no custom on the part of the company to receive the cotton, or to treat the cotton deposited in the car as in its custody, until it had received notification through the conductor of a passing train that the car was ready for transportation and a bill of lading was actually signed and delivered. The company had no agent or representative at the place to receive the cotton, and no one there to be notified of its being deposited in the car. This fact could only be brought to its knowledge by the shipper when the cotton was actually loaded on the car and ready for transportation.

The well-settled rules are as follows: "The carrier's liability as a comman carrier for the safety of goods tendered to it for transportation commences at the time of the delivery of the goods to it for immediate transportation." 5 Am. & Eng. Enc. L. (2d ed.), 180, and copious notes therein cited.

Immediate transportation means, of course, that the shipper exercises no further control, and the goods are exclusively in the hands of the carrier.

The second well settled rule is: "The delivery must be made to the carrier in its capacity as such, and not otherwise." 5 Am. & Eng. Enc. L. (2d ed.), 181, and notes therein cited.

The case of *Railroad Co.* v. *Murphey*, 46 Am. St. Rep., 202, relied on by counsel for the appellant, is a very good case illustrative of the rule for which we contend. The cases of *Railroad Co.* v. *Murphey*, 46 Am. St. Rep., 202; *Railroad Co.* v. *Hodde*, 42 Tex., 467, and *Truax* v. *Railroad Co.*, 3 Houst. (Del.), 233, relied on by appellant, will, on critical examination, be found inapplicable to the facts of the case at bar.

TERRAL, J., delivered the opinion of the court.

The appellee in this case recovered judgment by a peremptory instruction, and the appellants insist that a peremptory instruction should have been given in their behalf. On the twenty-eighth of September, 1897, the appellants loaded upon a car of the defendant company, at Clack's station, twenty-four

bales of cotton.    The loading of the car was finished after sun-
down, and after the local freight train of that day, which was
accustomed to take loaded cars from Clack's, had passed on its
return trip to Memphis, and no other local freight train, by
which alone cotton was shipped from Clack's, would arrive at
said station until the evening of the next succeeding day.
Early on the morning of the twenty-ninth of September the
carload of cotton was wholly consumed by fire, and this suit,
being a consolidation of five suits, is to recover its value.
Tate & Co. operated a public gin at Clack's, where the defend-
ant company had a siding, but it had no station house or agent
at that point.    Japson and Keesee, who were in charge of Tate
& Co.'s gin and plantation at Clack's, testified that when it was
desired to ship cotton, one of them would inform the conductor
of the local freight train, and the conductor would set out there
an empty car for loading, and that when the car was loaded
and ready for transportation, the local freight train desired to
take the loaded car would be flagged, and the conductor of it
informed that the car was ready for transportation, when the
conductor would sign the shipper's loading account, if found
correct, and attach the car to his train, and transport it to its
destination.    The contention of the appellants is that they had
delivered the twenty-four bales of cotton to the defendant
company, and that the cotton was burned while in its custody;
that the cotton was actually or constructively delivered to the
railway company, and that it is chargeable for the loss.    We
think, however, that it is quite clear that the railway company
had never come into the possession of the cotton for transpor-
tation.    The car, it was true, was the car of the company, and
it was placed upon the company's siding at Clack's for being
loaded, and the cotton was loaded into the car, but no servant
of the company had any notice of the car being loaded and
ready for shipment.    Keesee testifies that his recollection was
(the trial being had some time after the loss) that, when the
car was loaded, a man was left there with it, with the shipping

account filled out, in order to stop the train and get the conductor's receipt for it.    And it appears that the flagging of the local freight train and delivery of the shipper's loading account to the conductor was an essential feature of the shipping of cotton at Clack's.    But Japson and others conclusively show that the local freight train for that day had already passed before the car was loaded, and no other train that could have been expected to take the car would come by there until after the car was burned.    There was no constructive delivery of the cotton to the railroad company.    Its proper servant, the conductor of the local freight train, by which it was desired to have this cotton transported, knew nothing of its being loaded into the car for shipment, and there could be no acceptance of the cotton for shipment without such knowledge, unless, indeed, there had been an agreement between the parties making the mere loading of the car an acceptance of the freight for transportation.    But no such agreement was shown.    On the contrary, the clear course of dealing between the parties at Clack's showed that the shipper was to flag the proper local freight train and deliver to the conductor of the train the car to be transported, with the shipper's loading account thereof.    A bill of lading is not essential to charge the carrier with the duty of safely transporting the property delivered for carriage, but the doing of the several acts entitling the shipper to a bill of lading is necessary to charge the carrier with the safety of the articles intrusted to him.    In this case, according to the course of dealing between the parties, there could have been no delivery of the cotton to the railroad company until it was loaded and the local freight train conductor had notice of the items of freight, its destination and of its readiness for transportation.    Parties desiring to hold common carriers to a stricter responsibility than that imposed by the common law, should provide therefor by contract, for, unless bound by contract, otherwise a carrier is not responsible for the safety of articles intended for shipment until a delivery of them to him and an acceptance thereof,

and there can be no acceptance until he has knowledge of their readiness for transportation and the shipper's desire therefor. Hutch. on Carriers, ch. 4; Schouler on Bailment, ch. 3; Ang. on Carriers, ch. 140; 2 Kent's Comm., *608; *Railroad Co.* v. *Smyser*, 38 Ill., 354, s.c. 87 Am. Dec., 301, 303.

*Affirmed.*