CASE 70.—ACTION BY AMERICAN TOBACCO CO. AGAINST PITTSBURG, CINCINNATI, CHICAGO & ST. LOUIS RY. CO. FOR THE LOSS OF TOBACCO BY BURNING OF CAR.—October 10.

# Pittsburg, C., C. & St. L. Ry. Co. v. American Tobacco Co.

Appeal from Jefferson Circuit Court.

(C. P. Branch 1 Div.) EMMET FIELD, Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1. Carriers—Loss of Goods—Delivery to Carrier.—A carrier's liability as insurer for a loss of goods begins when the carrier has actually received the goods as a carrier for immediate shipment.

2. Same—Bill of Lading—Scope.—A bill of lading issued by a carrier is only prima facie evidence of the receipt of the goods described in it, being open to explanation, and imposing no liability on the carrier as an insurer until the goods are actually received by the carrier.

3 Same—Evidence of Delivery.—Evidence held to show that tobacco was delivered to a carrier for transportation before its destruction by fire, so as to charge the carrier as an insurer with liability for its loss, though no notice was given to the carrier after the loading had been completed.

4. Same—Delivery to an Acceptance by Carrier.—When goods designed for immediate shipment are placed in a condition to be carried, in the usual place of loading, in accordance with

Pittsburg, C., C. & St. L. Ry. Co. v. American Tobacco Co.

the custom of dealing between the parties, with the carrier's knowledge of the fact and purpose, or at the place of loading designated by the parties, there is both a delivery to and an acceptance by the carrier.

C. H. GIBSON for appellant.

### POINTS AND AUTHORITIES.

1. A bill of lading issued by a common carrier is only prima facie evidence of the receipt of the goods described in it. It is open to explanation, and imposes no liability on the carrier unless the goods are actually delivered. Elliott on Railroads, section 1419; A. & E. Encyc. of Law, 2d Ed., vol. 5, pp. 187-8; Hutchinson on Carirers, sections 122, 123.

2. The delivery to the carrier is not complete until notice is given that the shipment is ready for immediate movement and shipping directions are given. Hutchinson on Carirers, sections 69-99; Railroad Co. v. Smyser, 38 Ill.; Basnight v. R. R. Co. (S. Car.), 16 S. E., 323; Tate v. R. R. Co., 78 Miss., 842.

3. A car was switched to a private siding connected with the tracks of an intervening carrier to be loaded and switched back to appellant for carriage over its line. A bill of lading was issued just before or at the time the car was being loaded. Before the switching line was given the customary notice that the car was ready to be moved and before any shipping directions were given, the car and contents' were destroyed by fire. Under the authorities above cited there was no such delivery to appellant as imposed on it the duties or liabilities of a carrier.

4. Appellant was bound to furnish the car, and being unable to do so except through an independent switching line, in the selection of which it had no choice, the switching line was not appellant's agent in the matter, and appellant's responsibility could not attach until the car was returned to its actual possession.

AUGUSTUS E. WILLSON, attorney for appellee.

ARTHUR E. HOPKINS of counsel.

There can be no dispute that the bill of lading took effect, at the latest, two hours after the fire. The completing the loading of appellant's car and sealing it at the usual place of delivery of such cars at that warehouse to appellant was, therefore, a

complete delivery, and the bill of lading went into effect and was in full force and effect and the tobacco at appellant's risk and under its control and out of appellee's control, two hours or more before the fire, and therefore the loss was appellant's loss.

2. As the bill of lading is prima facie evidence of delivery and was in our possession, the burden as to non-delivery shifted to the appellant to prove affirmatively that the delivery was not complete before the tobacco was destroyed, and there is not a scintilla of evidence to show that. On the contrary the evidence is clear and undisputed that it was complete for more than two hours before the fire, and it follows that the evidence of delivery being undisputed it was the duty of the court to instruct the jury to find for appellee.

3. The shipper performed his whole duty when this car was loaded and sealed and the bill of lading was in its possession. If it failed to do all, the carrier should have alleged and proved the failure, to overcome the prima facie evidence of the bill of lading, and it did neither.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Affirming.

Appellee had certain hogsheads of tobacco stored at the warerooms of the Union Warehouse Company in Louisville. A private railroad switch, not owned nor controlled by appellant, extended alongside the warehouse. Appellee notified appellant of its desire to ship the tobacco over appellant's line of road from Louisville to Chicago, and requested that a car for the purpose be placed on the siding at the warehouse to receive it. Appellant placed the car as requested. The warehouse company was notified by appellee to load the tobacco. After the car was placed, the warehouse company put the tobacco on the platform of its warehouse alongside the car, for the purpose of loading it as soon as its laborers could conveniently attend to it. Appellee was notified that the tobacco was loaded, whereupon it prepared a bill of lading in the customary form and presented it to appellant's

city office for signature. Appellant signed the bill of lading between 12 o'clock noon and 1 o'clock p. m. of that day, which was about one hour in advance of the actual loading of the tobacco. The tobacco was loaded about half past 1 or 2 o'clock of that day, and the car was sealed ready for transportation. The fact is the siding was under the control of the Kentucky & Indiana Railroad & Bridge Company, a distinct corporation, which transferred cars between different points in the city of Louisville and across the Ohio river by means of its own tracks and bridge in connection with the tracks of connecting railroads. About 4 o'clock p. m. of the day on which the tobacco was loaded, and before the car was removed, a fire occurred in the neighborhood, which extended to the warehouse property and burned the car. The tobacco was entirely destroyed, or so materially damaged as that it was worthless. In this suit by the shipper against the carrier, who had undertaken to carry the tobacco, to recover for its loss, the question for decision was whether there had been such a delivery to the carrier as that its responsibility as an insurer of the freight attached. The facts were not disputed. Whereupon the court peremptorily instructed the jury to find for the shipper.

A bill of lading issued by a common carrier is only prima facie evidence of the receipt of the goods described in it. It is open to explanation, and imposes no liability on the carrier as an insurer, unless the goods are actually delivered. Elliott on Railroads, section 1419; Hutchinson on Carriers, sections 121-123. If the fact had been that the goods had been destroyed by fire before they were actually delivered to the carrier, as, for example, in this case, while they were still on the platform of the warehouse, the

carrier would not have been liable as an insurer, notwithstanding its receipt evidenced by the bill of lading. Its liability depends upon the fact as to whether it has actually received the goods as a carrier for immediate shipment. Appellant contends that the goods were not in its custody until they had reached its own line of road, or in no event until the goods had been loaded upon its car ready for shipment and it had been notified of the fact. Railroad v. Smyser, 38 Ill. 354, 87 Am. Dec. 301, Basnight v. Railroad Co., 111 N. C. 592, 16 S. E. 323, and Tate v Railroad Co., 78 Miss. 842, 29 South, 392. 84 Am. St. Rep. 649, are relied upon. We do not deem it material that appellant did not own nor control the siding where it had placed its car to receive the tobacco. It had assumed to receive it at that point, and had caused its car to be placed there for that purpose. It thereby constituted the warehouse side track the place for the reception of the freight, and is bound by the fact, as much so as if it had been upon its own siding or at its regular freight station in the city. Certain kinds of freight can be conveniently loaded only at points not freight depots. Where the parties adopt such point as the proper place for the loading of such freight, and the goods are actually loaded onto the cars placed at that point by the carrier for that purpose, the result, as fixing the carrier's liability upon its contract to safely carry and deliver the goods, is nowise different from what it would be if it had received goods into its freight depot for the same purpose. Indeed, the receiving of the goods into the freight depot is not essential to fixing the carrier's liability at all. It is the receipt at any point for the purpose of carrying them as freight that

initiates the liability for their safety. ·If the carrier and its shippers agree expressly, or tacitly by custom, that the goods be delivered to the carrier in its cars upon private sidings, the carrier, after so receiving them, has them in possession for transmission as freight. The Kentucky & Indiana Bridge Company in this case is deemed the agent of appellant carrier for the purpose of receiving the goods and hauling them to appellant's own line of railroad.

Nor do we find merit in appellant's contention that it was not notified of the loading of the tobacco after it was loaded. It was notified of the shipper's purpose to load it at the warehouse, and placed its car there to receive it. It signed the bill of lading evidencing its receipt, which was of itself notice that the car had been or was being loaded. When the car was loaded and sealed, a further notice of that fact was not necessary to apprise the carrier of what it already knew, namely, that it was ready for shipment; for notice might be given in advance, or might even be waived. When the tobacco was actually delivered into the carrier's car in accordance with the bill of lading, its physical delivery to the carrier for the purpose of transportation was completed. The prima facie character of the bill of lading became absolute upon proof of the subsequent actual delivery in accordance with its terms, the delivery being in such close proximity to the issuing of the bill as to be for all practical purposes a part of a single transaction. The doctrine that an acceptance by the carrier is essential to the creation of its contract liability is sound and undisputed. It would be most unjust if the shipper could deposit his goods in the carrier's car without notice to the latter, and fix a heavy lability upon it as an absolute insurer, while

it was ignorant of the fact that it was expected to take charge of the goods for shipment. But the acceptance need not always be shown to have been by an express act. It may be presumed, when the goods are left in the usual place in accordance with the contract or custom of the carrier to so receive them. Hale on Carriers, 68. The cases relied on by appellant, while bearing many of the features of the one in hand, show that control over the goods had not been parted with by the shipper, or that something else was to be done by the carrier before the shipment was to begin, such as counting or weighing the goods. But, when goods are designed for immediate shipment, the placing them in a condition to be carried at the usual place of loading, with the carrier's knowledge of the fact and purpose, or at the place of loading designated by the parties, constitutes a delivery to the carrier and acceptance by it. Railroad Co. v. Flanagan, 113 Ind. 488, 14 N. E. 370, 3 Am. St. Rep. 674; Railroad Co. v. Murphy, 60 Ark. 333, 30 S. W. 419, 46 Am. St. Rep. 202.

It was shown in the case that the custom of dealing between the parties was followed. The goods were delivered in the same manner, at the same or similar place. The bill of lading was signed simultaneously or in advance of the loading. The previous custom had been for the carrier, without further notice, to have the car transported to its own line by the bridge company's locomotives and servants in the usual course of their business. The plan usually followed was probably a feature and incident of the conditions existing in cities of the size of Louisville, where a number of railroads center, having different warehouses and depots, and where there are many manufacturing plants and public warehouses situated upon

private sidings.  The practice is a practical and reasonable solution of the needs of the situation, worked out by the common sense of those dealing in such matters.  There appears every reason for fixing the carrier's liability to begin at the usual or actual place of its receiving consignments of freight, as though they were received at the carrier's own depot, and presuming its acceptance from its custom and knowledge of the particular transaction, while no just reason is advanced to the contrary.

The action of the circuit court and its judgment being in conformity to these views, the judgment is affirmed.