[Civ. No. 3000.  Second Appellate District, Division Two.—April 12, 1921.]

GEORGE E. LEWIS, Respondent, v. FARMERS GRAIN AND MILLING COMPANY, Appellant.

[1] SALES—SHIPMENT BY COMMON CARRIER—DELIVERY.—Where shipment of goods is made by common carrier delivery is not complete until the vendor has relinquished his control over the car and given notice to the carrier that the goods are ready for shipment.

[2] ID.—DELIVERY OF GOODS "F. O. B."—PASSING OF TITLE.—Where the contract provides for the delivery of goods f. o. b. at the point of shipment it is presumed that the title then passes, but if required to be delivered at the point of destination, the property does not pass until such delivery.

[3] ID.—OPTION TO PURCHASE GRAIN—DELIVERY "F. O. B." AT POINT OF SHIPMENT—DESTRUCTION BY FIRE DURING LOADING—LOSS OF SELLER.—Under an option to purchase a crop of grain at a certain price free on board cars at point of shipment, the title remains in the seller until delivery to the carrier in the absence of anything in the contract to the contrary, and where the grain is destroyed before the car is completely loaded, the loss falls on the seller.

---

1. What amounts to delivery "f. o. b.," note, 16 A. L. R. 597.

[4] Id.—Delivery to Carrier—Passing of Title—Intent of Parties
—When Question of Law.—While the question as to whether or
not the parties intended delivery to the carrier to vest title in the
purchaser is one of fact, if the facts are not in dispute, it is a
question of law for the court.

APPEAL from a judgment of the Superior Court of Los
Angeles County. H. T. Dewhirst, Judge. Modified and
Affirmed.

The facts are stated in the opinion of the court.

Benjamin W. Shipman, Henry O. Wackerbarth, Jos. A.
Adair and Henry E. Carter for Appellant.

Haas & Dunnigan for Respondent.

CRAIG, J.—This is an appeal from a judgment in favor
of the plaintiff and against the defendant for the sum of
$1,326.55 and costs. Defendant admits a principal indebt-
edness of $569.11. The action is upon an express contract
for the purchase of a quantity of grain. On the twenty-
eighth day of August, 1914, the plaintiff granted the de-
fendant the following option:

"Los Angeles, Cal. Aug. 28th, 1914.

"In consideration for One (1) Dollar to me in hand paid,
I hereby give an option to the Farmers Grain & Milling Co.
to buy my crop of Light Seed oats consisting of about 1600
sacks, at a price of $1.25 per hundred pounds, free on board
cars at Owensmouth. This option is to be in force until
Sept. 6th, 1914, and if not exercised by the Farmers Grain
& Milling Co., before noon of that date it shall be null and
void.

"Geo. Lewis."

On the thirty-first day of August the defendant exercised
the option by letter and asked confirmation by return mail.
Instead of writing, plaintiff went to the office of the defend-
ant and confirmed the exercise of the option verbally. There-
after the plaintiff ordered a car from the Southern Pacific
Railway Company at Owensmouth for the purpose of loading
it with the oats. The railway company's agent spotted the
car and the plaintiff placed therein 541 or 542 sacks of oats
as contracted. While the car was not completely loaded it,

together with the oats, burned.  No bill of lading had been issued by the railroad company and no notice had been given to the agent of the railroad company that the car was ready for shipment.

The defendant insists that at the time the oats were burned they still remained the property of Lewis.  Both sides agree that the risk of loss followed title.  Upon this appeal it is necessary to determine who owned the oats at the time they were destroyed.  The answer to this question involves a construction of the contract composed of the option agreement and the letter exercising the option with the view to determining whether this entire contract thus constituted was executory or executed.  [1] If it be regarded as an executory contract, title could not be said to have passed, for where shipment is made by a common carrier it is held that delivery is not completed until the vendor has relinquished his control over the car and given notice to the carrier that it is ready for shipment.  (Hutchinson on Carriers, 3d ed., c. 4, sec. 125; *Basnight* v. *Atlantic Ry. Co.*, 111 N. C. 593, [16 S. E. 323]; Schouler on Bailments and Carriers, c. 3; *Tate* v. *Yazoo etc. Ry. Co.*, 78 Miss. 842, [84 Am. St. Rep. 649, 29 South. 392]; *Illinois Cent. Ry. Co.* v. *Smyser*, 38 Ill. 354, [87 Am. Dec. 301].)  If delivery to the railway company were to be regarded as constituting delivery to the defendant, it must upon the theory that the railway company became the agent of the consignee.  Therefore, if no delivery was made to the railway company, none was made to the defendant.  The contract in the case at bar contains a provision not found in any of the cases cited by the respondent, for in none of them did the vendor agree to deliver the property on board the means of transportation at the point named in the contract.  It is true that, in the great majority of cases where litigation has arisen concerning the contracts providing for f. o. b. delivery of goods no question has existed as to risks.  Such cases usually involve a dispute concerning expenses of delivery, and in cases of that character it is held that the term f. o. b. means "free on board."  The question is frequently raised as to whether under a provision for delivery of goods "f. o. b." such a delivery is one sufficient to pass the title and risk of transportation to the vendee.  If the point specified for delivery f. o. b. is the initial point of

shipment, title is passed to the vendee and he assumes the risks of transportation by delivery at that point. If the provision is for delivery f. o. b. at the final point of destination, the vendor retains the title and also the risk of transportation to the point named in the contract (note to *Lawder & Sons* v. *Mackie Grocery Co.,* 97 Md. 1, [62 L. R. A. 798, 54 Atl. 634], and cases there cited), and title passes upon such delivery to the vendee, who thereupon assumes risks of loss or destruction. (*Lord* v. *Edward,* 148 Mass. 476, [12 Am. St. Rep. 581, 2 L. R. A. 519, 20 N. E. 161].) But in no case of which we are aware has it been held that under a contract for delivery of goods free on board cars title passed to the vendee before delivery at some point. In *Vogt* v. *Shienebeck,* 122 Wis. 491, [106 Am. St. Rep. 289, 67 L. R. A. 756, 100 N. W. 820], it is said that authorities generally hold that ''a sale f. o. b. cars means that the subject of the sale is to be placed on cars for shipment without any expense or act on the part of the buyer, and that as soon as so placed the title is to pass absolutely to the buyer, *and the property be wholly at his risk,* in the absence of any circumstances indicating a retention of such control by the seller as security for purchase money, by preserving the right of stoppage *in transitu.*'' The necessary implication from this and other similar decisions is that until so placed title remains in the seller and the property is wholly at his risk. [2] Williston on Sales, section 280, states the rule to be that where the contract provides for the delivery of goods f. o. b. at the point of shipment it is presumed that the title then passes, but if required to be delivered at the point of destination, the property does not pass until such delivery. [3] In the case at bar there is nothing in the contract or the record outside of it to overcome this presumption. [4] While the question as to whether or not the parties intended delivery to the carrier to vest title in the purchaser is one of fact (*Dannemiller et al.* v. *Kirkpatrick et al.,* 201 Pa. St. 218, [50 Atl. 928]), if, as in this case, the facts are not in dispute, it is a question of law for the court.

The judgment is modified by reducing it to the sum of $569.11, with interest thereon at the rate of seven per cent per annum from the twenty-first day of October, 1914, this

being the date on which the defendant received the delivery of the grain, etc., not in dispute upon this appeal, and, as so modified, it is affirmed.

Finlayson, P. J., and Works, J., concurred.