## SUGARLAND RY. CO. v. DEW BROS.
### (No. 7731.)

(Court of Civil Appeals of Texas. Galveston. April 30, 1919. Rehearing Denied May 22, 1919.)

1. CARRIERS ⊚⟼134—CARRIAGE OF FREIGHT— RECEPTION FOR TRANSPORTATION — SUFFICIENCY OF EVIDENCE.

Evidence *held* to show that defendant railway company, sued for the loss of cotton by fire, had in fact accepted such cotton for transportation, to initiate its liability as carrier.

2. CARRIERS ⊚⟼139—CARRIAGE OF GOODS— LIABILITY AS CARRIER.

Where a railroad had received cotton for transportation, and its failure to issue bills of lading for and to move it promptly was due to the action of its agent, the conductor of train, for his own convenience, and not for the benefit of the shippers, nor because of lack of information as to destination or consignees, the road's liability was that of carrier, rather than a mere warehouseman, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 709, 710.

3. APPEAL AND ERROR ⊚⟼1053(5)—HARMLESS ERROR—EVIDENCE.

In action for loss by fire of cotton shipped, admission in evidence of bills of lading covering consignments not embracing cotton in suit *held* harmless to railroad, in view of fact jury merely passed on value of cotton at time of destruction, and were not asked to determine whether or not it had been received by railroad for shipment.

4. APPEAL AND ERROR ⊚⟼1050(1)—HARMLESS ERROR—EVIDENCE.

The improper admission of testimony on an essential point of fact does not furnish ground for reversal, where another witness properly testified to the same fact.

5. EVIDENCE ⊚⟼543(4)—OPINION TESTIMONY —QUALIFICATION OF EXPERT ON COTTON.

In an action against a railroad for the destruction by fire of cotton in transit, a member of plaintiff firm, long experienced in handling, buying, and selling cotton, *held* qualified to give an opinion as to quality of the cotton.

6. CARRIERS ⊚⟼136—CARRIAGE OF GOODS— VALUE OF COTTON—QUESTION FOR JURY.

In an action against a railroad for destruction by fire in transit of cotton shipped over its line, question of value of cotton *held* for the jury.

Appeal from District Court, Ft. Bend County; Samuel J. Styles, Judge.

Suit by Dew Bros. against the Sugarland Railway Company. From judgment for plaintiffs, defendant appeals. Affirmed.

D. R. Peareson, of Richmond, and A. M. Waugh, of Sugarland, for appellant.

T. H. Stone and E. P. Phelps, both of Houston, for appellees.

GRAVES, J. Dew Bros. sued the Sugarland Railway Company as a common carrier for the reasonable market value of nine bales of cotton, upon substantially this allegation a's to its liability:

"That on or about the 30th day of August, 1917, plaintiffs tendered and delivered to, and defendant accepted for transportation and shipment at De Walt, Ft. Bend county, Texas, nine (9) bales of cotton, aggregating in weight five thousand (5,000) pounds, which said cotton was loaded into a car, furnished by defendant for said purpose, and which was standing upon the tracks of defendant company, and that after delivery to the defendant by plaintiffs and after acceptance by the defendant for transportation and shipment, in the usual course and way, as per shipping directions of the plaintiffs, the said car in which said cotton was stored, while in the possession of defendant for transportation and shipment, caught fire, and the said nine bales of cotton were entirely consumed and destroyed."

The railway company answered by demurrer and denial, both general, and by special denial that the cotton was in its hands for transportation, averring that the loss had not resulted from any negligent act or omission upon its part, but that the fire was due to inherent defects in the cotton, or to the negligence of plaintiffs. The cause was submitted to a jury upon two special issues, merely embodying an inquiry as to what was the reasonable market value of the cotton at De Walt on August 30, 1917. Upon

---

⊚⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the jury's returning answers fixing the value, the court entered judgment for plaintiffs, in the sum of $1,039.11 and interest, from which the railway company appeals.

[1] Through several assignments it is first contended that no liability was established against the railway company, in that it was sued as a common carrier, not as a warehouseman, without any charge of negligence upon its part, and the evidence showed it was never notified of the destination or consignee of the cotton, and had not accepted it for shipment. It is true there was no charge that appellant was negligent, as the quoted averment of the basis of its liability discloses, nor prior to the burning was it furnished the particular destination or name of the consignee of the cotton, consequently this claim of a failure to fasten the liability of a carrier upon it might be correct, if the evidence further showed that it had not received and accepted the goods for shipment; but a careful examination of the statement of facts impels a finding that it had in fact accepted the cotton for transportation, substantially in accord with the way it was usually done at that point, had sealed the car, and started it upon its course. While it is not thought essential that the evidence be fully detailed here, its outstanding features, all of them mutually conceded to be correct, were:

The railway company, a common carrier of freight, with its line of road extending from Sugarland, on the Galveston, Harrisburg & San Antonio southward through De Walt and other stations to railroad connections in that direction, had no agent at De Walt; that being only a flag station. Bills of lading were signed by the conductor of the train receiving freight there, but were sometimes made out by him and sometimes by the agent of Dew Bros., Mr. Hutchings, perhaps usually by the latter. In this instance the cotton was loaded into a car furnished by the railway company for that purpose, on its side track at De Walt; what subsequently occurred being thus stated by the conductor himself:

"When I reached De Walt, I had some empties to put in where these cars were, and I stopped there to move the loaded cars. Mr. Walter Dew told me that they were ready, so I sealed the cars and pulled them out. When we arrived there the doors of this car were open, and before leaving we closed and sealed the doors. This car was put on the main line and put in the train. We were going to move it south with us, and set it out further down the line, to be delivered wherever it would go to. I moved this car to the main line—from the gin to the main line.

"Q. (interposing). What did Walter Dew want when he said the car was ready? A. I suppose he wanted us to move it. He meant it was ready for shipment, and therefore we sealed the doors. Yes, sir; we sealed the doors when we received the cars for shipment; then we pulled the car, and set it out with the train I had. When I went into the store to get the bills of lading, which were not ready, I might have told Mr. Hutchings that I would sign the bills of lading on my way back; but I don't remember that I told him that. I won't deny it, one way or the other; they were ready to move."

He did not testify that, before so sealing and placing the car containing this cotton in his train, he offered to make out the bills of lading himself, or to wait until Mr. Hutchings could do so, nor, indeed, that he made any inquiry as to the point of destination or the name of the consignee, but further said that, if the bills of lading had been ready, he would have signed them and carried the cars on with him. It seems there were other consignments of cotton to go at the same time, necessitating the preparation of ten bills of lading altogether, two of them covering the cotton here involved, all of which on this occasion appear to have been left to Mr. Hutchings to make out. Both Messrs. George L. Dew and Hutchings, after explaining that the train doing the switching in this instance was not the one to move the car to its destination, but on its south-bound trip would set it in on a track from where the northbound train for Houston would come along and pick it up, testified that the conductor, Mr. Reading, part of whose testimony has above been quoted, came into Dew Bros.' office before starting south, and, when told that Mr. Hutchings lacked three billings of having these ten bills of lading completed, said he would get and sign them all on his return trip. Mr. Hutchings' statement about the matter was this:

"I generally made out the bills of lading for the conductor to sign for shipments made from De Walt. It was my custom to make them out. I did not represent the Sugarland Railway Company, but I made out the bills of lading merely as an accommodation, and the conductor of the Sugarland Railway Company signed the bills of lading for all freight shipped from De Walt. The conductor of the Sugarland Railway Company did not sign bills of lading for the car of cotton that was burned the day in question, because when he returned to De Walt on his way back to Sugarland the car had burned up and he wouldn't sign it then. The bills of lading for this car of cotton were tendered to him on his south-bound trip, with the exception of three billings which we had not finished when he arrived, and he said he would get them and sign them on his return trip, and between the time that he went south and the time he came back the car was destroyed. When he came back, I presented the bills of lading to him; but he didn't sign them, assigning as his reason for not signing that he couldn't sign for the cotton when it was not there—it had burned up."

[2] It thus clearly appears, we think, not only that there had been a previous receipt

of the cotton for transportation, but that the failure to issue bills of lading for and to promptly move it was due to the action of appellant's agent, the conductor of its train, taken for his own convenience, and not for the benefit of appellees, nor because of any lack of information as to destination or name of the consignees. In such circumstances the liability would be that of a common carrier, rather than of a mere warehouseman. Articles 709 and 710, Vernon's Sayles' R. S. 1914; Railway Co. v. Lowery, 155 S. W. 993; Railway Co. v. D. S. Cage & Co., 174 S. W. 859; Railway Co. v. Edwards, 56 Tex. Civ. App. 643, 121 S. W. 574.

After the loading of this cotton into the car under the conditions shown no manner of control over it was retained by the shippers, nothing remained to be done by them as such before it could be sent on its way, delivery to the carrier for shipment being complete; under the statutes cited it was then the duty of the railway company to transport it and to give the shippers bills of lading therefor; not having done so solely for purposes of its own, it cannot escape liability as a common carrier upon the belated claim that no specific shipping directions were given it. There is not a suggestion in the record that these were not readily available, nor that they would not have been promptly furnished, but for the conductor's preference that his work in making out the bills of lading, which were to contain them, be done by the shippers' agent, to avail himself of which he deferred the transportation. These conclusions necessitate the overruling of the first six assignments, as well as the eleventh and last one presented.

[3] Other assignments call in question the court's action in submitting to the jury the question of the value of the cotton destroyed, and in admitting in evidence two bills of lading covering some of the ten consignments before mentioned, but not shown to embrace the cotton in suit, along with testimony of different witnesses to the effect that this cotton was of the grade of "middling," or better, and that certain other cotton shipped about the same time by the appellees to Houston parties had been by the latter so graded. These objections are all predicated upon the claim that no competent evidence of the grade and value of the cotton destroyed was before the jury.

After a careful consideration of all the rulings thus complained of, the conclusion is reached that none of them disclose reversible error. Conceding that the admission of these bills of lading before the jury was erroneous, it was clearly immaterial and harmless, in view of the fact that they merely passed upon the value of the nine bales of cotton at the time of its destruction, and were not asked to determine whether or not it had been received by the railway company for shipment.

[4] As to the evidence concerning the grade of the cotton, especially the testimony of George L. Dew, the objection that his estimate was shown to be solely based upon the account of sales of other cotton sold about the time that here involved was ginned and burned, even if well founded, would not necessarily furnish ground for reversal, because the witness J. S. Hutchings testified to the same facts Dew said the account sales showed, and Hutchings' knowledge neither appeared to have been derived from the account sales nor is any question raised here about its sources.

[5, 6] Dew's further statement that he thought the cotton would grade middling, or better, did not rest entirely upon any such accounts or reports of what similar cotton had been sold or classed as, but was in the nature of an opinion, in part, at least, formulated from and based on his long experience in raising, handling, ginning, buying, and selling cotton produced, prepared, and put into the channels of trade at the same place and under well-nigh the precise conditions applying to that he was testifying about, together with added fact of having seen and been familiar with that particular cotton itself; in these circumstances, we think it was permissible for him to give an opinion as to its quality, and that the objection was one going to the weight rather than the admissibility of his testimony. 17 Cyc. 112, 113. In a word, it is thought there was ample admissible uncontradicted evidence to take the question of the value of the cotton to the jury, and that no such denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment against it has been shown. Rule 62a (149 S. W. x). An affirmance has therefore been ordered.

Affirmed.