**HINES, Director General of Railroads, v. STEELE. (No. 7915.)**

(Court of Civil Appeals of Texas. Galveston. June 9, 1920. Rehearing Denied Oct. 7, 1920.)

**I. Carriers ☞134—Evidence held to show Director General of Railroads had received shipment of cotton.**

Evidence *held* to show that the federal Director General of Railroads, sued for the value of cotton alleged to have been destroyed by fire while in his possession as a common carrier, had received such cotton for shipment, and had possession thereof as a common carrier when it was destroyed; the cotton having been placed in a freight car, the car closed, its doors fastened, and the Director General's agent having been notified of the number of bales in the car and its destination, and having agreed to transport the shipment, several hours before the fire.

**2. Carriers ☞41—Cotton held accepted for shipment, despite subsequent additional loading of car.**

Forty-two bales of cotton placed in a freight car were duly accepted by the federal Director General of Railroads for shipment, though 3 bales were subsequently placed in the car after the Director General's agent was notified that the car was ready and had signified his acceptance of the shipment.

**3. Carriers ☞41—Issuance of bill of lading not necessary to binding force of contract to transport.**

Issuance of bill of lading by a carrier adds nothing to the binding force of the contract of carriage, and verbal agreement to accept and transport a car of designated freight, which is being loaded when the agreement is made, becomes a complete acceptance of the shipment for transportation when the loading is finished; the loaded car being on the railroad's track, where it was placed by the railroad to be loaded.

**4. Carriers ☞113—No liability, where something remains to be done by shipper, until goods are ready.**

Where something required by law, or contract, remains to be done by the shipper after the goods are put into the hands of the carrier, before they are transported, the carrier does not become liable until the goods are ready for shipment, a rule which does not require the shipper to give notice that the shipment is ready for transportation, where the carrier has already been informed that it will be by the time the carrier can move, and has agreed to transport it.

**5. Carriers ☞113—Liable where, when loss occurred, cotton was received for shipment, and nothing remained to be done by shipper.**

Where, when loss of cotton in a railroad car occurred, the cotton was in possession of the railroad for shipment, and nothing remained to be done to complete the shipment by the shipper, the road having been notified the car was ready, and having agreed to transport it in accordance with the custom at the point, the federal Director General of Railroads controlling the road is liable for the loss.

Appeal from District Court, Grimes County; Ben H. Powell, Judge.

Suit by W. L. Steele against Walker D. Hines, Director General of Railroads. From a judgment for plaintiff, defendant appeals. Affirmed.

Henderson & Ranson, of Bryan, and John M. King, of Houston, for appellant.

Lewis & Dean, of Navasota, for appellee.

PLEASANTS, C. J. This is a suit by appellee against the appellant to recover the value of 42 bales of cotton alleged to have been destroyed by fire while in the possession of appellant as a common carrier for transportation from Dallam station, in Brazos county, to the city of Navasota, in Grimes county. The only question presented by appellant's brief is whether the evidence is sufficient to sustain the finding of the trial court that the cotton was in the possession of appellant for transportation at the time it was destroyed. The facts are these:

The International & Great Northern Railway Company was being operated by appellant as Director General of Railroads at the time the cotton in question was placed by appellee on a car of said company for shipment from Dallam station, on the line of said railway in Brazos county, to the city of Navasota, which is on the line of said railway in Grimes county. The railway company has no agent at Dallam, but had constructed and maintains a spur track and platform, where it receives freight for transportation. This spur track and platform is on the right of way of the railway on the farm of appellee. A cotton gin is owned and operated by appellee on his land adjoining the railway platform. For many years it has been the custom of the railway to receive shipments of cotton from appellee at this station, such shipments being delivered and received in the following manner: Appellee would make request for a car, which would be placed by the railway on the spur track alongside the platform. The cotton would be placed in the car by appellee, the car closed, and the railway company's agent at Navasota notified that the car was ready for shipment.

The railway company has always accepted and transported appellee's cotton, delivered in this manner, without issuing any bills of lading therefor. In pursuance of this custom, appellee made request for a car, which was placed on the spur track and 39 bales of

cotton were placed therein by appellee on the evening of September 12, 1918, and the car closed and its doors fastened. On the evening of the 13th the car was reopened, and 3 additional bales, which had been ginned on that day, were put in the car, and it was again closed and fastened, and appellee no longer had or assumed any possession or control thereof. Appellee went to Navasota on the evening of the 13th, and notified the agent of the railway that the car was loaded with 42 bales of cotton and was ready for shipment to Navasota, and the agent replied, "All right."

The trial court finds that it is probable that at the time this notice was given the 3 bales of cotton had not been placed in the car. We do not regard the finding as material; but we think the evidence shows that the 3 bales were not in the car at the time the notice was given. They were not in the car when appellee left Dallam to go to Navasota, but were on the platform, tagged and ready to be placed in the car. Each of the 42 bales of cotton, when placed on the platform, had a card attached thereto on which was written:

"From W. L. Steele, Dallam, Texas, to A. H. Wilson, Navasota, Texas."

On the reverse side of the card would be placed the number and weight of the bale and name of the tenant who produced or the owner of the cotton. These tags or cards were placed on the bales when they were weighed, before they were placed on the railway platform. The 3 bales were put in the car late in the evening of the 13th and the car closed. About 10 o'clock that night the cotton was discovered to be on fire, and despite the efforts of persons living near, some of whom were owners of part of the cotton, it was practically all destroyed; the salvage only amounting to 2,375 pounds, which was sold by appellee for $546.17.

After the 3 bales were placed in the car, and the car closed, no control was exercised thereover by the appellee or his employés. The spur track and platform, as before stated, belonged to the railway company, and they and the car of cotton were in its exclusive control after the cotton was loaded.

The trial in the court below without a jury resulted in a judgment in favor of appellee for the sum of $6,772.10, the value of the 42 bales, less the salvage of $546.17.

[1] We think the facts before stated, which are established by the undisputed evidence, not only authorized, but compelled, a finding by the trial court that the appellant had received the cotton for shipment and had possession thereof as a common carrier at the time it was destroyed. The long-existing custom under which shipments were delivered to the railway and received by it for shipment from Dallam station was fully pleaded, and the undisputed evidence shows that this shipment was delivered and received in accordance with the custom pleaded. The cotton had been placed in the car, and the car closed, and its doors fastened, and appellant's agent had been notified of the number of bales in the car and its destination, and had agreed to transport the shipment to Navasota several hours before the fire which destroyed the cotton occurred.

[2] But it is urged by appellant that the cotton had not been received by the railway for shipment, because the 3 bales of it were placed in the car after the agent had been notified that the car was ready for shipment and had agreed to take it to Navasota. We fail to see how the question of the acceptance of the 42 bales of cotton for shipment is in any way affected by the fact that 3 of the bales were placed in the car after the agent was notified that the car was ready and had signified his acceptance of the shipment. The movement of the shipment was not delayed by reopening the car and putting in the 3 bales, and no fraud or deception was thereby perpetrated upon appellant. But, independent of this, we think the completion of the loading was in such close proximity to the giving of the notice and the agreement of the agent to transport the car that it must be regarded as a part of one transaction.

In the case of Railway Co. v. American Tobacco Co., 126 Ky. 582, 104 S. W. 377, a bill of lading was issued about an hour before the freight was loaded, and no notice was given the railroad after the loading was completed. The shipment was destroyed by fire about 3 hours after it was loaded. It was contended by the railway in that case that it was not liable for the loss because, the freight not having been loaded at the time the contract of carriage evidenced by the bill of lading was entered into, and it not having been notified of the loading after such loading was completed, it had not received the freight for shipment. In answering this contention the court says:

"It was notified of the shipper's purpose to load it at the warehouse, and placed its car there to receive it. It signed the bill of lading evidencing its receipt, which was itself notice that the car had been or was being loaded. When the car was loaded and sealed, a further notice of that fact was not necessary to apprise the carrier of what it already knew, namely, that it was ready for shipment; for notice might be given in advance, or might even be waived. When the tobacco was actually delivered into the carrier's car in accordance with the bill of lading, its physical delivery to the carrier for the purpose of transportation was completed. The prima facie character of the bill of lading became absolute, upon proof of the subsequent actual delivery in accordance with its terms; the delivery being in such close proximity to the issuing of the bill as to be for all practical purposes a part of a single transaction."

[3] The issuance of a bill of lading adds nothing to the binding force of the contract of carriage, and a verbal agreement to accept and transport a car of designated freight which is being loaded at the time the agreement is made becomes a full and complete acceptance of the shipment for transportation when the loading is finished; the loaded car being upon the track of the railway, where it was placed by the railway for the purpose of being loaded with the designated freight.

[4] The rule generally stated is that, where something required by law or contract remains to be done by the shipper after the goods are put into the hands of the carrier before they are transported, the carrier does not become liable until the goods are ready for shipment. Railway Co. v. Lowery, 155 S. W. 992; Railway Co. v. Pool, 10 Tex. Civ. App. 682, 31 S. W. 688; 6 Cyc. 414. This rule cannot be construed as requiring the giving by the shipper of notice that the shipment was ready for transportation, when the carrier had already been informed that it was or would be ready by the time the carrier could move it, and had agreed to transport it. No possible benefit could accrue to the carrier by its being again informed, after the loading of the goods had been completed, that the shipment was ready for transportation, and the custom pleaded did not require such second notice.

[5] At the time the loss occurred the cotton was in the possession of the railway for shipment, and nothing remained to be done to complete the shipment by appellee. The railway had been notified that the car was ready for shipment, and had agreed to transport it in accordance with the custom under which it received shipments at this station. We think upon these facts the appellant is clearly liable for the loss of the cotton. Railway Co. v. Dew Bros., 212 S. W. 190; Railway Co. v. Hall, 64 Tex. 619; Railway Co. v. Trawick, 80 Tex. 274, 15 S. W. 568, 18 S. W. 948; Railway Co. v. Anderson, 212 S. W. 814.

We shall not discuss the several assignments of error presented in appellant's brief in detail. What we have said disposes of the controlling question presented by the appeal. None of the assignments presented can be sustained, and the judgment of the trial court must be affirmed.

Affirmed.