79   352
79   459
79   460
——
79   353
89   181

GARNER v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY.

Opinion delivered June 18, 1906.

1.  CARRIER—LIABILITY FOR FREIGHT.—The liability of a carrier begins
    when it receives freight for immediate shipment, and is not dependent
    upon the issuance of a bill of lading.   (Page 356.)

2.  SAME—RIGHT TO SUE FOR LOSS OF FREIGHT.—Where the course of deal-
    ing between a consignor and a consignee was, first, that cotton was
    delivered to a carrier to be delivered to the consignee, next the
    carrier delivered a bill of lading, lastly the bill of lading was delivered
    either directly to the consignee or with draft attached to a bank
    when in due time it would reach the consignee, the title did not pass
    to the consignee merely upon delivery of cotton to the carrier for ship-
    ment, and in case of its subsequent loss the consignor was entitled to
    recover its value.   (Page 356.)

Appeal from Johnson Circuit Court; *William L. Moose,*
Judge; reversed.

Garner Brothers sued the St. Louis, Iron Mountain & South-
ern Railway Company, alleging that on the 23d of December,
1901, they delivered to the defendant on the cotton platform at
the station of Knoxville on the L. R. & Ft. Smith Ry., operated

79—23

by it, to be carried and delivered to the Lesser Cotton Company, at Little Rock, eight bales of cotton, describing them; and, at the time of the delivery of the cotton and the acceptance thereof for shipment to the Lesser Cotton Company, its agent went upon the platform, and took the number of bales and their numbers, marks and weights, from which to issue therefor a bill of lading, but did not do so; and whilst the cotton was in the exclusive possession of defendant for immediate shipment, with directions where and to whom to ship the same, and during the night of said 23d of December, 1901, was consumed by fire on the platform where it was placed by plaintiffs and received by defendant for shipment, as aforesaid, and therefore was not transported and delivered to the Lesser Cotton Company. The value of the cotton at time of delivery is said to have been $309.60.

The answer disclaimed all knowledge as to whether or not the eight bales of cotton had been delivered to it for immediate shipment, and demanded proof, denied that the cotton was destroyed by fire whilst in its exclusive custody, as alleged, and that it had damaged plaintiffs in the sum claimed, or any other sum.

Mohon testified that at the instance of Robinson he put eight bales of appellant's cotton on the platform at Knoxville on the 23d of December, 1901. That about 12 o'clock he went into the office in the depot, and informed the agent and Robinson that appellants' cotton (eight bales) had been put on the platform. That evening the agent, Reed, came out on the platform and checked the eight bales he had put on the platform for appellants. That he was with the agent when the cotton was checked, that he had the numbers of the bales on a piece of paper, and when he would find a bale of it he would make a cross out to the right. He thus checked the eight bales put on the platform for the Garners, and no more, as he had put only eight bales on the platform for the Garners. That the cotton put on the platform by him that day was burned that night.

J. W. Robinson testified substantially that he was watchman over the cotton on the platform at night, and frequently assisted the agent in making out bills of lading, and had previously done so for Garner Bros.; that shortly before the platform and cotton on it was burned they sent him a list of their cotton at

Knoxville with instructions to ship to the Lesser Cotton Company, and this he hung up on a hook in the office at the depot; that on the morning of the day before the fire they called him up to know if he could not get their cotton on that day, and he told them he would if he could get some one to haul it, and went out and engaged Fred Mohon to haul and put it on the platform. He was sick that day and went home, but in the evening went back to the depot, and Reed, the agent, said something to him about the Garner cotton, and he said to him, "I left these instructions like I told you this morning, the shipping business, on that file." He further says he told him that cotton goes to the Lesser Cotton Company. Reed then asked him if he had checked the cotton, and he told him no, that he had been sick all day. Reed then said something about going out to check it, or that he had checked it, he doesn't remember which. That he doesn't know that Reed read the letter of instructions as to shipment from Garner Bros. to him, but he pointed him to it and told him the shipment was to be made to the Lesser Cotton Company.

This was all the material evidence. Defendant moved the court to instruct the jury to find for it, which was done. Plaintiffs have appealed.

*Cravens & Covington,* for appellants.

The title was still in appellants when the cotton was destroyed. No bill of lading had been issued, nor any draft drawn on the Lesser Cotton Company with bill of lading attached. Appellants were the proper parties to sue. 82 S. W. 253; 73 Ga. 472; 9 Am. St. Rep. 199; 1 Am. Rep. 137; 60 Ark. 333; 56 Ark. 279; 73 Ala. 396.

HILL, C. J. The Garners were merchants at Lamar, and contracted to sell Lesser Cotton Company 100 bales of cotton at seven and one half cents f. o. b. the railroad platform. When delivered to the railroad, a bill of lading was issued, and Garner would attach it to a draft drawn on Lesser Cotton Company, and collect the draft at his bank. The details of the sale are not otherwise important. The Garners had eight bales of cotton at Knoxville, and directed it shipped. It was delivered upon the railway platform, the numbers checked by the agent preparatory

to issuing a bill of lading, and shipping instructions were delivered to the agent. The night of the day when the cotton was put on the platform the station burned, and this cotton was destroyed. The Garners sued the railroad company for its value, and the court directed a verdict for the railroad company, and the Garners have appealed.

A carrier's liability begins when it receives freight for immediate shipment, and is not dependent upon the issuance of a bill of lading. *Railway Company* v. *Neil,* 56 Ark. 279; *Railway Company* v. *Murphy,* 60 Ark. 333; *Little Rock & Ft. S. Ry. Co.* v. *Hunter,* 42 Ark. 200. There was ample evidence to go to the jury on the contention that the cotton was received for immediate shipment, although a bill of lading had not been issued.

Appellee's counsel has not favored the court with a brief, but appellants' counsel states that his theory was that from the evidence of J. S. Garner it was shown that the cotton belonged to Lesser Cotton Company, and not to the Garners. This was evidently the theory upon which the verdict was directed.

A bill of lading represents the property. It is a muniment of title, and is both a receipt and contract. *Turner* v. *Israel,* 64 Ark. 244; Ray on Negligence of Imposed Duties of Freight Carriers, § 25. When such instruments are attached to drafts, then the title to the property passes with the draft, and the pledgee or purchaser of the draft has a special ownership in the goods, which he may assert against every one. Ray, *Id.* § 31. But this principle can not control here. The testimony of Garner shows that he was not entitled to receive anything on the cotton under this contract with Lesser Cotton Company until he received his bill of lading. Then he was entitled to draw for the money. In this way Lesser Cotton Company was protected, for it could hold the cotton against the world upon such an instrument. It would pay the draft, or a bank would cash it in reliance upon such payment, only when the bill of lading was attached thereto conveying the title. Until the Garners furnished Lesser Cotton Company with the muniment of title, they were not entitled to receive a cent on the cotton under the contract. This cotton was being prepared to follow a course of

affairs when the title would pass to the cotton company. The first step was delivery to the carrier, the next securing a muniment of title, and finally to deliver that muniment either directly to the Lesser Cotton Company or to a bank with draft attached when in due commercial course it would reach the Cotton Company. In this case only the first step had been taken, the delivery to the railroad company. None of the other necessary acts to change the title to Lesser Cotton Company had been performed.

Appellant's counsel say that appellee relied upon "opinions of this court in certain liquor cases in support of his contention." Doubtless, reference is made to *State* v. *Carl,* 43 Ark. 353, and cases following it, where it was held delivery to the carrier completed the contract. *Burton* v. *Baird,* 44 Ark. 556, is another instance where delivery to the carrier in pursuance of directions from the other party completed the contract. But those cases do not reach to this one. Here the mere delivery to the carrier with shipping directions was not the termination of Garner's conduct to complete his sale. He had to get a bill of lading and attach it to a draft before he was entitled to a cent, and hence his sale was not complete when he delivered the cotton to the carrier. This was not the final act in consummation of his contract. This was Garner's evidence. It was reasonable and consistent with a common business practice, and, if given credit, the cotton was appellants' at the time of the fire. The case should have gone to the jury.

Judgment reversed, and cause remanded.