The decree is therefore reversed, and the complaint is dismissed for want of equity.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY. v. BURROW.

Opinion delivered February 1, 1909.

1. CARRIERS—SUFFICIENCY OF DELIVERY.—Where a shipper tenders freight to a carrier for immediate shipment, and the carrier's agent receives such freight on its platform in preparation to load the same on cars for transportation after it is checked over and bill of lading issued for it, the delivery is complete, and the carrier is thereafter liable for the freight, whether a bill of lading is signed or not. (Page 180.)

2. INSTRUCTIONS—CONSTRUCTION.—All of the court's instructions should be construed together. (Page 182.)

3. SAME—ASSUMPTION OF UNDISPUTED FACTS.—There is no prejudice in an instruction which assumes as true matters which are established by undisputed evidence. (Page 182.)

4. CARRIERS—DELIVERY OF FREIGHT—CUSTOM.—It is competent to prove the custom of a railway company with reference to deliveries of freight for immediate shipment. (Page 182.)

5. SAME—DELIVERY OF FREIGHT—EVIDENCE.—It was admissible, in a suit by a shipper against a carrier for cotton consumed by fire, for the shipper to prove that after the fire he received a postal card from the carrier's agent to the effect that the carrier would not assume further responsibility for the cotton that was burnt, as tending to show that the agent had knowledge of the delivery of the cotton to the carrier for shipment. (Page 182.)

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit was brought against the railway company to recover for loss of cotton by fire after it had been delivered for shipment.

The answer of the railway company denies that the cotton was delivered to it, or that it agreed to transport it.

There was a verdict and judgment in favor of the plaintiffs for $2,411, and interest from June 20, 1905, at 6 per cent. until paid.

Judgment was accordingly entered, and the cause is here on appeal. The facts necessary to a proper understanding of the assignments of error are sufficiently stated in the opinion.

*Thos. B. Pryor* and *Lovick P. Miles,* for appellant.

1. There never was a delivery to the carrier. 60 Ark. 338.

2. In the 1st instruction the court invaded the province of the jury, and there is no evidence to sustain the 5th. It was also error to refuse the instruction asked by defendant. 60 Ark. 338; Hutchinson on Carriers, § 125.

3. The testimony of Oates as to custom was not admissible. Hutchinson on Carriers, § 118.

4. No foundation was laid for the introduction of testimony as to the postal card.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The evidence conclusively shows delivery to the carrier, and amply supports the verdict.

2. The admission of Oates' testimony was not prejudicial, as the proof was ample.

3. It was shown that the postal card was lost, thus laying proper foundation for parol testimony.

4. There was no invasion of the province of the jury, as the evidence shows that Burrow owned the cotton, which was covered by insurance. No evidence was offered to dispute it. 67 Ark. 154; 79 *Id.* 356.

5. It is immaterial whether a bill of lading is issued or not. The cotton was offered and placed in the carrier's care with its knowledge and consent, and nothing remained to be done by the shipper. 60 Ark. 388; 69 *Id.* 157; 75 *Id.* 102; 79 *Id.* 356.

Hart, J., (after stating the facts.) The first assignment of error is that the court erred in giving instruction No. 5 to the jury. It reads as follows:

"If you find from the evidence that Burrow & Company tendered the cotton to defendant for immediate shipment and deposited the cotton on defendant's platform for loading into cars, and that defendant, through its agents, assented to such delivery and received the cotton into its care and custody upon its platform in preparation to loading it into cars for transportation after it had been checked over and bills of lading had been issued for it, then the delivery of the cotton was complete, and it is immaterial whether or not defendant's agents had actually signed the bills of lading for the cotton; and defendant became liable as a common carrier to Burrow & Company for the cotton."

Counsel for appellant contends that there is not a scintilla of evidence upon which to base that part of the instruction that appellant "through its agent, assented to such delivery and received the cotton into its care and custody." The testimony on that point is substantially as follows:

"Burrrow & Company had bought from Bennitt & Company 474 bales of cotton at Russellville, Arkansas. About 200 bales of this cotton had been delivered to the railway company, and drafts had come in to Burrow & Company at Little Rock, Arkansas, for the purchase price with bills of lading attached. A member of the firm of Bennitt & Company was at Russellville making delivery of the cotton to the railway company for shipment. He marked it into grades, loaded it upon drays, and sent it to the railroad company's platform for shipment. He also sent blank bills of lading for the cotton deposited upon the railroad platform to

be signed by the agent. The platform would hold about 200 bales. As some of the cotton was shipped out, other bales were placed in the vacant space. The agent would check the cotton and then sign the bills of lading. This process had been going on several days before the 70 bales in controversy were placed upon the platform. The agent had been notified that the 70 bales were on the platform, and the bills of lading for them had been handed to him to be signed. These 70 bales were placed upon the platform in the same way the other cotton had been delivered there. The railroad agent admitted that he had been notified that the 474 bales would be delivered for shipment as fast as it could be received; that as soon as a part of it was loaded into the cars, so that there was a vacant space on the platform, more bales would be placed there so that the vacant space was constantly kept filled."

The only reason the agent had not signed the bills of lading was because he had not time to check the cotton and see if it was all there. We are of the opinion that there was sufficient evidence upon which to predicate the instruction.

The jury evidently found that the cotton was received for immediate shipment, and the testimony warranted its findings. *St. Louis S. W. Ry. Co.* v. *Leder,* 87 Ark. 298; *Garner* v. *St. Louis, I. M. & S. Ry. Co.,* 79 Ark. 353; *Pine Bluff & Ark. River Ry. Co.* v. *McKenzie,* 75 Ark. 100.

Next, counsel for appellant insist that the court erred in refusing to instruct the jury as folows:

"The court instructs you that the defendant railway company is not liable as a common carrier, and is not an insurer of cotton placed upon its platform preparatory to shipment thereof, but that before defendant becomes liable as a common carrier everything must be done that is necessary to be done in order to complete the shipment, and a bill of lading issued therefor or said cotton received by said railway company for shipment."

The court properly refused to give this instruction. It will be seen from the authorities cited *supra* that a carrier's liability begins when it receives freight for immediate shipment, and is not dependent upon the issuance of a bill of lading.

The clause therein in regard to the bill of lading was not proper, in view of the facts shown by the record, and was calcu-•

lated to mislead the jury. Consequently it was prejudicial. Moreover, a proper enunciation of the law applicable to this feature of the case was embraced in the instructions given by the court, and they should be considered together. *St. Louis S. W. Ry Co.* v. *Leder, supra.*

Counsel also say that the court invaded the province of the jury in its first instruction, in which it told the jury that the cotton sued for belonged to C. C. Burrow & Company at the time of the fire, and that the Standard Marine Insurance Company had insured Burrow & Company against loss by fire on the cotton covered by the policy of insurance. Without reviewing the testimony on this point, it is sufficient to say that these facts were shown by the undisputed evidence. Hence no prejudice could result from the action of the court. *Pacific Life Ins. Co.* v. *Walker,* 67 Ark. 154.

Counsel object to the testimony of F. M. Oates as to the custom of the railway company with reference to deliveries for immediate shipment. His testimony was competent. *St. Louis S. W. Ry. Co.* v. *Leder, supra.* Besides, appellant also made proof of the same custom.

Counsel also object that appellees were permitted to testify to the receipt after the fire of a postal card from the agent to the effect that the railroad company would not assume any further responsibility for the cotton that was burnt. The foundation for admission of parol evidence of its contents was laid by showing that the postal card had been lost or destroyed. The testimony was relevant because it was a circumstance to be considered by the jury as tending to show that the agent had knowledge of the delivery of the cotton to the railway company for shipment.

Finding no prejudicial error in the record, the judgment is affirmed.