S. M. BOSTON, Appellant, v. J. L. ALEXANDER, Respondent.

Kansas City Court of Appeals, December 7, 1914.

1. **SALES: Warranty: Representation.** A representation of soundness or any other quality in an article sold, is not necessarily a warranty. Evidence of the representation, where a warranty is alleged, is admissible, and, with other circum-

stances, may establish the warranty, but before a jury should find such representation to have been a warranty, they should be satisfied that it was so intended and understood as a representation and not the expression of mere matter of opinion.

2. ————: ————: ————. Where the defects are not discoverable upon ordinary inspection, but are known to the vendor, an agreement to warrant will be implied from representations of soundness and where the vendor knows the use the vendor intends to make of the property the sale for such use at a sound price carries an implied warranty that the property is free from hidden defects which would impair its usefulness for such purposes.

Appeal from Putnam Circuit Court.—*Hon. George W. Wanamaker*, Judge.

REVERSED AND REMANDED.

*Mills & Mills* for appellant.

*J. C. McKinley* for respondent.

JOHNSON, J.—Plaintiff brought this suit in a justice court to recover for a cow he sold defendant for $65 and defendant refused to receive. The trial in the circuit court on appeal ended in a directed verdict for defendant and plaintiff appealed. The sale and attempted delivery of the cow at the price alleged is conceded, as is also the fact that defendant refused to receive her and returned her to plaintiff on the ground of a breach of warranty.

The testimony of plaintiff, which was the only evidence heard by the court, discloses the following facts: Plaintiff, a farmer, called upon defendant, his neighbor, at the latter's home, to borrow money to buy feed for his stock and a conversation ensued which culminated in an understanding that defendant, who said he wished to buy a good farm milch cow for the use of his family, would call at plaintiff's farm the next day and look at three cows which plain-

185MoApp2

tiff owned and from which he might make a selection and pay the agreed price in hay at $8 per ton. Plaintiff priced one of the cows at $60 and another at $70. The next day, defendant, being unable to keep the appointment in person, sent his brother-in-law, also a farmer, with full authority to select and purchase one of the cows. The agent inspected the three cows and his choice fell upon the one plaintiff had priced at $70. Plaintiff had owned her three or four months, having purchased her from another farmer in the neighborhood, who had informed him that during the preceding summer (this was in February), she had given ropy, dark-colored milk on three or four occasions after bruising her bag in jumping over logs or fences, and that he had put a yoke on her to prevent her from further indulging her breachy propensity. She still carried marks of the yoke on the back of her neck and jaws, but plaintiff states that during the time he had owned her she had exhibited no vicious inclination and had not worn a yoke; that she gave good, pure milk, and that her bag was not in a diseased or injured condition. He was allowed to testify, without objection, to facts and circumstances corroborative of his opinion that the occasional giving of dark and ropy milk may be due to temporary causes and is not necessarily indicative of a permanent defect. Before buying the cow defendant's agent asked plaintiff about ''her milking qualities and if her bag was all right'' and was told that ''her bag was all right and that this cow is as straight as a whip as far as I know.'' No other questions were asked by the agent and plaintiff did not go into the subject of the cow's history before he owned her but confined his praises to the time of his ownership. The agent haggled over the price and plaintiff finally agreed to sell her for $65, whereupon the agent bought her and drove her to defendant's farm. The next day defend-

ant returned her to plaintiff's farm and she has since been there in the possession of plaintiff.

It appears from a conversation plaintiff afterward had with defendant's agent that a neighbor called at defendant's farm and, seeing the cow, asked "if that wasn't the Mat Hurley cow," and being answered in the affirmative said, "Well, that cow gave bad milk last summer." This information moved defendant to return the cow. Plaintiff called the following day upon defendant and insisted that he accept the cow, but defendant refused on the ground that plaintiff had warranted her and that she did not fill the warranty. He offered to take one of the other cows but plaintiff refused, saying, "When I trade, I trade to keep, I don't never back out of a trade," and with this Parthian shot he left and proceeded to the justice court where he brought this suit. He states the cow was worth $75 at the time of defendant's breach of the contract and, therefore, admits he has suffered no pecuniary damage. In unwillingly permitting the cow to be returned and in since keeping and using her, his position became that of a vendor who, tendering full performance of the contract of sale, is met with the wrongful refusal of the vendee to receive the property. In such case the liability of the vendee is to respond in damages for the loss sustained by the vendor, such loss being measured by the difference between the contract price and the market value of the property at the time of the vendee's breach. Measured by this rule plaintiff has sustained no actual damage, since he states the market value of the property exceeded the sale price and in no event may he recover more than nominal damages. "In an action by vendor against the vendee, for the nonacceptance of property sold as contracted for, the measure of damages is the amount of actual injury sustained by vendor in consequence of such nonacceptance, which is usually the difference between the

price agreed to be paid, and the value of the property." [Rickey v. Tenbroeck, 63 Mo. 563.] But an action at law for the breach of a contract may be maintained by the injured vendor for nominal damages where it appears he has suffered no pecuniary loss. "The damages which the law infers from the infraction of a legal right are absolute, they cannot be controverted; they are the necessary consequent. The act complained of may produce no actual injury; it may, in fact, be beneficial, by adding to the value of the property, or by averting a loss which would otherwise have happened, and still it would be equally true in law and in fact that it was, in itself, injurious, if violative of a legal right. The implied injury is from that circumstance." [Fulkerson v. Eads, 19 Mo. App. 620; Holt v. Railway, 87 Mo. App. 203; Brevard v. Wimberly, 89 Mo. App. 331.] Since plaintiff is entitled to nominal damages a peremptory instruction in favor of defendant should not have been given, unless the court was justified in the conclusion, as one of law, that plaintiff, by his own admissions, is shown to have made false representations to defendant and his agent which amounted to a warranty of soundness and suitability to the purposes for which plaintiff knew the cow was being purchased. There is no evidence of false representations in plaintiff's statement of what was said by him. He stated the cow's bag was all right and that she was a good milch cow, and from his description of her she was just what he represented her to be. The court could not say as a matter of law that she was afflicted with a permanent and injurious defect from the fact that six or eight months before she had given bad milk, especially in the face of testimony tending to show that such a result might have been due, and, in this instance, was due to temporary causes which no longer existed. There was no representation that the cow was not breachy and the gist of plaintiff's testimony

is that she was not subject to that vice at the time of the sale. Judicial knowledge cannot be taken of the fact, if it be a fact, that such a vice is incurable, and that when a cow once becomes breachy she always remains so. On the hypothesis that what plaintiff said about the cow constituted a warranty that she was sound and suitable for the purposes of her intended use, the testimony of plaintiff relating to her condition at the time of the sale was sufficient, at least, to take the case to the jury on the issue that the representations were true.

But we go further and hold that evidence fails to disclose either an express or an implied warranty. ''A representation of soundness or of any other quality in an article sold, is not necessarily a warranty. The evidence of the representation where a warranty is alleged is admissible, and in connection with other circumstances, may establish the warranty, but before a jury should find such representation to have been a warranty they should be satisfied that it was so intended and understood and not to have been the expression of mere matter of opinion." [Matlock v. Meyers, 64 Mo. 531.]

The rule of *caveat emptor* is still in force in this State and that rule will not permit the mere puffing of his wares by a vendor to be tortured into the expression of an intention to warrant the property as sound and free from defects which are open to the discovery of the purchaser upon a reasonable examination; nor may a warranty be implied from such praise. The buyer must avail himself of the opportunity offered him to inspect the property, and if he fails to make reasonable use of such opportunity, he will not be heard to complain of defects which a proper inspection would have disclosed. No agreement of the vendor to warrant against such defects will be implied from mere representations of soundness. As long as buyer and seller stand upon equal

ground each may deal with the other at arm's length and the seller may sound the praises of his wares without danger of incurring the liability of a warrantor. With respect to defects not discoverable upon ordinary inspection but which are known to the vendor, an agreement to warrant will be implied from representations of soundness and where the vendor knows the use of the vendee intends to make of the property the sale for such use at a sound price carries an implied warranty that the property is free from hidden defects which would impair its usefulness for such purposes. [Moore v. Koger, 113 Mo. App. 423, and cases cited.]''

It does not appear from the evidence before us that any of the defects claimed by defendant were not discoverable upon a reasonable inspection. Defendant's agent availed himself of the opportunity to examine the cow. The marks of the yoke were plainly to be seen and they proclaimed that she had been breachy. It is not shown that the defect in the bag and udders, if any existed, was not discoverable to an experienced farmer making a reasonable examination. If these were patent defects plaintiff's representation of soundness, despite his knowledge that defendant intended to purchase the cow for the use of his family was a mere representation and evidenced no intention to warrant against such defects. Of course the evidence of defendant may be such as to raise an issue of fact on the subject of warranty, or no warranty, but as the case now stands plaintiff neither expressly nor impliedly warranted the cow, nor was he guilty of false representations as to soundness.

The judgment is reversed and the cause remanded.

All concur.