PHILIP LEVINE, Doing Business Under the Style and Firm Name of LEVINE BAG COMPANY, Appellant, v. ABE HOCHMAN, Doing Business Under the Style and Firm Name of MINNEAPOLIS BARREL AND BAG COMPANY, Respondent.*

St. Louis Court of Appeals. Opinion filed June 2, 1925.

1. **EVIDENCE: Contracts: Written Agreements: Formal Instrument Not Necessary: Correspondence.** Regarding the application of the rule of law excluding parol evidence to vary the terms of a written instrument, a formal instrument is not necessary to make an agreement written, and a correspondence may constitute such agreement.

2. ———: ———: **Agreement Resting Partly in Writing and Partly in Parol.** An agreement for the sale of second-hand bags rested partly in writing and partly in parol, where the minds of the parties did not meet and final terms were not agreed upon until a long distance telephone conversation during which the minds of the parties met and the final terms of the contract were agreed upon; a correspondence prior thereto shows nothing more than negotiations and unaccepted offers or conditions of sale.

Levine Bag Co. v. Minn. Barrel & Bag Co.

3. **SALES: Sales by Sample: Warranties: Rule Stated.** To constitute a sale by sample from which a warranty arises, it must appear that the parties contracted with reference to the sample with the understanding that the sample represented the quality of the bulk, and the mere fact that a sample was furnished on a request fails to make it a sale by sample so as to imply a warranty.

4. ———: ———: ———: **Evidence: Question for the Jury.** In an action upon a contract for breach of warranty relative to the sale of secondhand bags, *held* that the evidence of a sale by sample was sufficient to take the case to the jury.

5. ———: ———: ———: **Whether Warranty in Sale of Secondhand Bags was Breached: Jury Question.** In an action on a contract for breach of warranty relative to a sale of secondhand bags, *held* that the plaintiff's evidence tends to show a breach of warranty as to the quality of the bags sufficient to take the case to the jury.

6. **VENDOR AND PURCHASER: Breach of Warranty: Rescission: Damages: Buyer May Accept and Retain Goods and Recover Damage for Breach of Warranty.** In an action on a contract for breach of warranty relative to the sale of secondhand bags, the fact that plaintiff changed his mind about rescinding the contract, and elected to accept the bags upon defendant's refusing to accept a rescission, thus putting plaintiff in the situation of retaining and accepting the bags, *held* upon a breach of warranty, plaintiff may accept and retain the goods and recover damages for the breach of warranty.

7. **DAMAGES: Nominal Damages: Demurrer to Evidence.** Even though plaintiff shows no substantial damages, yet, where the evidence tends to show a breach of contract, nominal damages are recoverable, necessitating the overruling of a demurrer to the evidence.

8. **ACTIONS: Vendor and Purchaser: Sale of Secondhand Bags: Breach of Warranty: Petition: Grounded on Breach of Warranty as to Quality of Bags.** In an action on a contract for breach of warranty relative to sale of secondhand bags, petition *held* grounded on a breach of warranty as to the quality of the bags.

9. **VENDOR AND PURCHASER: Breach of Warranty: Remedies of Purchaser: Damages: Measure of Damages.** The measure of damages for breach of warranty in the sale of secondhand bags was the difference between the value of the bags actually furnished to the buyer at place of delivery and the value they would have had at the place of delivery if they had possessed warranted qualities.

10. ———: ———: ———: ———: **Title Passing at Point of Destination: Damages Estimated at Such Point.** Where secondhand bags were sold, sight draft attached to bill of lading, f. o. b. shipping point, the title was not to pass until the sight draft was paid, and the goods delivered to plaintiff at destination, and hence the place of delivery was at point of destination, and damages for breach of warranty were to be estimated at the latter place.

11. **APPELLATE PRACTICE: Amended Petition: Right to File: Point Not Preserved for Review.** The right of plaintiff to file an amended petition is not subject to consideration by the appellate court where the record fails to preserve such petition.

*Headnotes 1. Evidence, 22 C. J., Section 1460; 2. Evidence, 22 C. J., Sections 1459, 1715; 3. Sales, 35 Cyc., p. 406; 4. Sales, 35 Cyc., p. 481; 5. Sales, 35 Cyc., p. 482; 6. Sales, 35 Cyc., p. 431; 7. Damages, 17 C. J,. Section 59; 8. Sales, 35 Cyc., p. 447; 9. Sales, 35 Cyc., pp. 467, 468; 10. Sales, 35 Cyc., pp. 334, 467; 11. Appeal and Error, 4 C. J., Section 2304.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Robert W. Hall,* Judge.

REVERSED AND REMANDED.

*Abbott, Fauntleroy, Cullen & Edwards* and *Taylor R. Young* for appellant.

(1)   In a sale by sample there is an implied warranty that the bulk of the goods sold will, in quality, equal, conform to or correspond with the sample. Voss v. McGuire, 18 Mo. App. 477; Roth v. Continental Wire Co., 94 Mo. App. 236; Alabama Steel Co. v. Symons, 110 Mo. App. 41.   (2)   Where a buyer has paid for goods and there is a breach of warranty the buyer has an election of remedies; he may rescind the contract, return the goods and recover back the purchase price, or he may retain the goods and recover as damages the difference between the value of the article at the date of the sale and what the value would have been had the goods conformed to the warranty. Laumeier v. Dolph, 145 Mo. App. 78; Stearns v. McCulloch, 18 Mo. App. 411; Wall

v. Gates, 6 Mo. App. 242; Brown v. Emerson, 66 Mo. App. 63. (3) Where a buyer retains the goods sold the measure of damages for breach of a warranty in the sale is the difference between the value of the article at the date of sale and what the value would have been had the article conformed to the warranty, and this is true even though the buyer later resells the goods at an increased price. Brown v. Emerson, 66 Mo. App. 63; Americus Grocery Co. v. Brackett, 119 Ga. 489, Twine Co. v. Wohlhuter, 71 Minn. 484; Union Co. v. Jones, 128 Fed. 672; Sedgwick on Damages, Sec. 762; Note 5 L. R. A. (N. S.) 1151. (4) A pleading where a breach of warranty is relied on to support a claim for damages need allege only the terms of the warranty, the breach, and the facts from which the damages for the breach are to be inferred. 35 Cyc. 446; Brown v. Welden, 27 Mo. App. 251; Same case, 99 Mo. 564; Labeaume v. Pocling- ton, 21 Mo. 35. (5) Amendments should be freely al- lowed to permit the pleadings to conform with the proof, and to refuse a request to amend to conform to the proof is an unwarranted abuse of the trial court's discretion. R. S. 1919, sec. 1274; Wright v. Groom, 246 Mo. 158.

*M. N. Sale* for respondent.

(1) The contract being wholly in writing, it is for the court to construe, and the court properly held that there was no warranty because the contract was not a sale by sample. (No citations deemed necessary.) (2) Parol evidence was not permissible to show that it was a sale by sample, because the contract was solely in writ- ing. 2 Williston on Contracts, p. 1245, sec. 643; Im- perial Portrait Co. v. Bryan, 111 Ga. 99; Meyer v. Everth, 4 Campb. 22; Harrison v. McCormick, 89 Cal. 327; Weiner v. Whippel, 53 Wis. 298; 1 Williston on Sales, sec. 215, p. 415, and cases cited in Note 40. (3) Even if there had been a warranty that the bags equal the sample or correspond to the samples, the measure of

damages would be the difference between the bags actually furnished to the buyer at the place of delivery and the value the bags would have had at the place of delivery if they possessed the alleged warranted qualities. Wilson v. Russler, 91 Mo. App. 281; Hardwood Lumber Company v. Adam, 134 Ga. 281, 32 L. R. A. (N. S.; 196; 3 Williston on Contracts, sec. 1391, p. 2469, and cases cited in Note 72; McDonald v. K. C. Bolt Co., 149 Fed. 360, 8 L. R. A. (N. S.) 1110; McCormick, etc., Co. v. Heath, 65 Mo. App. 461, 467, where Judge Biggs of this court states the measure of damages in the following words: "The measure of damages is the difference between the marketable value of the machine at the time and place of sale as warranted, and its value as it was" (citing several Missouri cases). (4) To constitute a sale by sample so that a warranty will be implied, it must appear that the parties contracted with reference to the sample, with the understanding that the sample represented the quality of the bulk. The mere fact that a sample was furnished to the appellant at his request does not make it a sale by sample so as to imply a warranty. 35 Cyc. of Law & Procedure, p. 406; Gunther v. Atwell, 19 Md. 157; Henry v. Talcott, 175 N. Y. 385; Beirne v. Dord, 5 N. Y. 95; Reynolds v. Palmer, 21 Fed. 433; Couisenary v. Pearsall, 40 N. Y. Supr. Ct. 113; Hargous v. Stone, 5 N. Y. 73; Gardiner v. Gray, 4 Campb. 144, 16 Rev. Rep. 764; Meyer v. Everth, 4 4 Campb. 221, 15 Rev. Rep. 722; Tiedeman on Sales, sec. 188; Borthwick v. Young, 12 Ont. App. Rep. 671. (5) Where goods are sold by a written contract which contains a description of their quality, without referring to any sample, if the goods do not correspond with that description it is not material for the vendor to show that they corresponded with the sample exhibited at the time of the sale to the purchaser, this not being a sale by sample, but by the description in a written contract. Tye v. Fynmore, 3 Campb. 462, 14 Rev. Rep. 809; Cases cited, supra. (6) There being no warranty—that is,

no sale by sample, acceptance is implied from a resale or from any act on the part of the buyer which he would not have a right to perform if he were not the owner of the goods. Jones v. Packing Co., 245 S. W. 4; Tiffany on Sales (2 Ed.), 298; Stevens v. Mackay, 40 Mo. 222; Lbr. Co. v. Warner, 93 Mo. 386; Electric Co. v. Electric Co., 201 Mo. App. 26; Ruhl Clo. Co. v. Singleton, 261 Mo. App. 366; Faust v. Koers, 111 Mo. App. 560. (7) There being no proof of damage (appellant having made a profit) the plaintiff was properly nonsuited. The petition was framed on the theory that plaintiff could recover the profit on the sale by sample to the Chase Bag Company. That theory was abandoned in the court below and is abandoned here. Profits, of course, could not be recovered, and hence there was no damage. Wilson v. Russler, 91 Mo. App. 281, and text-writers and decided cases cited.

DAVIS, C.—This is an action on a contract for breach of warranty, relative to a sale of second-hand bags. The court at the close of plaintiff's evidence announced that he would and did give an instruction to the jury, in the nature of a demurrer to the evidence, to find for defendant. Thereupon plaintiff took an involuntary nonsuit, with leave to move to set the same aside, the court later overruling a motion to that effect. In due time plaintiff perfected an appeal to this court.

Plaintiff's evidence tends to show that plaintiff was doing business in the city of St. Louis as Levine Bag Company, and that defendant was doing business in Minneapolis as Minneapolis Barrel and Bag Company; that by letter of February 9, 1922, defendant wrote plaintiff as follows: "We would ask as to whether you would be interested in approximately 25,000 cotton seamless 16 oz. bags, some bright while others are dark, having small holes. We bought these bags from a malting company and if you can use them just as they run and as we are getting them from the company we can sell them to you at price of 11½¢ each, f. o. b. Mpls, subject to sight

217 M. A.—6.

draft. If you would desire them in order we could sell them at 15¢ each, f. o. b. Minneapolis.''

That by letter dated February 11, 1922, plaintiff wrote defendant as follows: ''We also requested you to send us average samples of those Seamless, and we will let you know whether we can use them.''

That by letter dated February 13, 1922, defendant wrote plaintiff as follows: ''We are sending you today via PP, six average run seamless bags which we can sell to you at price of 11½¢ each if you take them as they run or 15¢ in order, f. o. b. Minneapolis. When we say as they run we mean that we will guarantee half of these bags to be free from holes while the other half will have small holes which will require very little mending.''

That on February 13, 1922, plaintiff wrote defendant as follows: ''Also let us know whether you have already sent us sample of your Seamless, that we had requested you to send.''

That on February 18, 1922, defendant wrote plaintiff as follows: ''The samples of seamless bags will show you how they run. We can sell them to you free from holes, patched, if you so desire or in mendable condition at prices quoted you in our letter of the 9th inst.''

That on February 18, 1922, plaintiff telegraphed defendant as follows: ''Received samples of Seamless will accept Five thousand Wire if you will sell entire lot at a lower price and state how many in the lot and if all bags are like samples Can you sell additional one hundred pound Misprints.''

That on February 20, 1922, defendant wrote plaintiff as follows: ''We are in receipt of the following telegram from you: 'Received sample seamless will accept five thousand Wire if you will sell entire lot at lower price and state how many in the lot and if all bags are like sample Can you sell additional one hundred pound misprints.' We called you by long distance and sold you approximately 17,000 seamless 16 oz. bags at price

of 11¢ each, f. o. b. Minneapolis, bags to be good and in mendable condition. We also confirmed this sale to you by the following telegram: 'Confirming conversation we have sold you between sixteen eighteen thousand sixteen ounce seamless bags eleven cents (11¢) Minneapolis sight draft Bags good and mendable Shipment to be made this week.' We will take it up with railroad company and find out which will be the cheapest way to ship these bags and will make shipment this week.''

That by letter of February 20, 1922, plaintiff wrote defendant as follows: ''This is in reply to your wire of February 20, where you confirmed us a sale of 16 to 18 thousand 16 oz. Seamless at 11¢ f. o. b. Minneapolis. Draft attached to bill of lading, for good and mendables, free from junk, and that you ship those bags this week. Please make shipment as promptly as possible. We understood in your conversation over the phone, that these bags will run about like the samples you sent us, and about 50% of them will be free of holes and patches.''

That by letter of February 22, 1922, defendant wrote plaintiff as follows: ''We are in receipt of your letter of the 20th inst., and in answer to same wish to say that the seamless bags will be shipped this week. During our conversation when I said that 50% of these bags would run free from holes I meant that these bags would be mended. I want to make this clear to you and know that you will be more than satisfied with the bags.''

That by letter of Feb. 24, 1922, plaintiff wrote defendant as follows: ''We have your letter of the 22nd, and note that you will ship us the Seamless this week, which is satisfactory to us. We also note what you have to say with reference to 50% will be free of holes. However, we understood from your writing, and conversation over the 'phone, that at least 50% of those bags were to be free of holes and patches. In fact you stated about one-fourth or one-third of those bags would run small holes. Of course, we do not mind if there are a few mended bags in the lot, but we did not expect they

should all be mended, those that are free from holes, as
we would never be able to sell them that way, and be-
sides your samples are practically free from holes with
the exception of one.''

The evidence further tends to show, by the later cor-
respondence between the parties, that plaintiff received
the bags on paying the sight draft attached to the bill
of lading; that upon inspection plaintiff found practi-
cally none of the bags equal to samples, and the greatest
margin unmendable, and advised defendant to have an
inspector examine bags immediately; that the bags had
been attacked by rodents, and some were wet and rotten;
that the bags were in plaintiff's hands subject to defend-
ant's disposition, and that plaintiff wanted defendant to
return the amount of the check with freight, amounting
to $1787.69, and that upon defendant's failure to do so
plaintiff would dispose of these bags to the best possi-
ble advantage and give defendant credit on account, ad-
vising promptly, and expecting defendant to pay the dif-
ference, together with the profit that he would make on
a resale.    However, the evidence further tends to show
that plaintiff sold these bags to the Chase Bag Com-
pany for 20¢ each for No. 1; 18¢ for No. 1 with holes like
six samples submitted.    That of these bags sold to the
Chase Bag Company 1,086 were according to sample;
that 4,142 might be considered like the sample, only hav-
ing holes; that 1419 would be classified as No. 2 of lower
grade than the sample; that they were of a different
class of bags without holes but patched and soiled, show-
ing wear; that by use of the words ''free from holes''
was meant a patched bag; that by ''good and mendable''
was meant a bag that could be patched and made fit for
use; that in addition 6,342 bags were a still lower grade
of sack, which had holes in them and required patches,
and were not of the same quality as the 1419 bags that
were free from holes; that they required mending be-
fore they would hold wheat and could be used; that they
were badly rat-chewed bags; that an additional 2671 bags

would not make bags, at least as compared to the sample; they might be termed, worthless, rejected; that this did not mean that they were worthless, for they had a price as junk at so much per pound; that 2671 bags were rejected by the Chase Bag Company; that these 2671 bags were not worth over 2¢ each on the market; that the 6342 bags in February and March, 1922, were worth 8 to 10¢; that the fair market value of the 1086 bags were 20¢ per bag, and the 4142 bags was 18¢ per bag; that the 1419 bgs were valued at 8 to 10¢ a bag; that the Chase Bag Company paid plaintiff for 4142 bags 20¢ per bag; for 1419 bags 14¢ per bag, and for 6342 bags 12¢ per bag, making a total of $1922.46 paid plaintiff by the Chase Bag Company for 12,989 bags. The record further shows that plaintiff was permitted to testify that defendant on February 20, 1922, called plaintiff over the long distance telephone and had a conversation with him; that in this conversation defendant stated to plaintiff that he had received his telegram with reference to the 5000 Seamless, and that defendant stated that he had as many as from sixteen to eighteen or perhaps seventeen thousand in the lot; that plaintiff had asked him whether the entire lot would run like the samples that plaintiff had received from defendant; that defendant had replied that they would absolutely; that the samples sent were the average samples; that plaintiff had inquired whether defendant would shave the price, to which defendant had replied that if he would take the entire lot he would make it 11¢ f. o. b. Minneapolis.

Such other facts, if any, as we deem pertinent will later appear.

Omitting the first paragraph, plaintiff's petition is as follows:

"Plaintiff states that on or about the 20th day of February, 1922, plaintiff and the defendant entered into a contract, partly in writing and partly in parol, by the terms of which defendant agreed to sell and the plaintiff agreed to buy between sixteen and eighteen thousand

16-ounce seamless bags, 50 per cent of which were to be free from holes and the remaining 50 per cent to be good and mendable seamless bags in strict accordance with samples submitted prior thereto, for the price and sum of eleven ($.11) cents per bag, f. o. b. Minneapolis, sight draft attached to bill of lading.

"Thereafter, to-wit, on or about the 24th day of February, 1922, defendant delivered on board the railroad cars for transportation 15,500 of said bags and attached said bill of lading the sight draft in the sum of one thousand seven hundred and five ($1,705) dollars, bearing date, Minneapolis, Minnesota, February 24, 1922, and drawn on the Levine Bag Company, St. Louis, Missouri, and on or about the 13th day of March, 1922, said draft with bill of lading arrived at the First National Bank in said city of St. Louis, Missouri, and in pursuance of the contract between plaintiff and defendant aforesaid, plaintiff paid said draft at the said First National Bank, to whom defendant had caused the same to be sent, and received said bill of lading and immediately unloaded said shipment of bags.

Plaintiff further states that he has fully performed all the terms of said contract by him to be performed, but that the defendant has failed and refused and still refuses to carry out and fully perform his part of said contract in this, to-wit: defendant failed and neglected and refused to deliver to plaintiff in accordance with said contract and in accordance with said sample, in that substantially 90 per cent of said bags were full of holes, a great portion of which were unmendable and were torn and damaged by rodents in such manner as to render approximately 25 per cent of said bags wholly worthless and approximately 75 per cent of said bags are unmerchantable, in that they are dirty, soiled, full of holes and unmendable, in addition to all of which approximately 10 per cent of the entire lot were decayed and rotten and that said entire shipment was not and is not of the reasonable market value to exceed nine hundred ($900) dollars.

"Plaintiff further states that at the time he purchased said bags from the defendant in accordance with the contract hereinbefore set forth, he immediately resold the same at a net profit, after deducting freight, for one thousand one hundred and fifty dollars and thirty-one cents ($1,150.31).

"Plaintiff further states that the defendant failed and refused to carry out the terms of his contract by him to be performed, in this, that he failed and neglected and refused to ship the plaintiff 16,000 bags, by reason of which plaintiff suffered an additional damage in the sum of forty dollars ($40).

"Plaintiff states that by reason of the failure of the defendant to carry out his contract, he has been damaged in the sum of two thousand, two dollars and thirty-one cents ($2,002.31).

"Wherefore, plaintiff prays judgment against the defendant in the sum of two thousand, two dollars and thirty-one cents ($2,002.31), and the costs of this suit."

I. Plaintiff's first three assignments of error relate to the action of the trial court in directing a verdict for defendant at the close of plaintiff's case.

The briefs of the parties set forth theories and authorities relied on to support their respective contentions, which it will be necessary to consider in determining the propriety of the trial court's ruling.

II. Defendant denies that the evidence tends to show a sale by sample. He argues that the contract was wholly in writing, therefore excluding parol evidence relating to its terms. We take it that he bases this contention on the rule of law that testimony of prior or contemporaneous conversations are inadmissible to alter, contradict, add to, or vary the terms of a written agreement. While we agree that a formal instrument is not necessary to make an agreement written, and that a correspondence may constitute such, we think the rec-

ord presents a very different situation. A review of the correspondence and facts will demonstrate that the minds of the parties met and the final terms agreed upon, during the long distance telephone conversation, and that the minds of the parties did not meet until then. To that time plaintiff had not decided to buy nor defendant to sell. The correspondence prior thereto shows nothing more than negotiations and unaccepted offers or conditions of sale. That the contract was agreed upon during the long distance conversation is shown by defendant's letter of Feb. 20, 1922, saying: "We called you by long distance and sold you approximately 17000 16 ounce bags at price of 11¢ each, f. o. b. Minneapolis, bags to be good and in mendable condition." And again, by defendant's letter of Feb. 22, saying: "During our conversation when I said that 50% of these bags would run free from holes, I meant that these bags would be mended." Our conclusion is supported by plaintiff's letters of Feb. 20th and 24th, referring to the telephone conversation. We think the agreement rested partly in writing and partly in parol.

III. Defendant asserts, to which we agree, that to constitute a sale by sample from which a warranty arises, it must appear that the parties contracted with reference to the sample, with the understanding that the sample represented the quality of the bulk, and the mere fact that a sample was furnished on a request fails to make it a sale by sample so as to imply a warranty.

The rule supporting the above assertion is stated in 35 Cyc. 405 and 6, as follows:

"On a sale by sample there is an implied warranty that the bulk of the goods is equal to the sample in kind and quality. . . . The warranty implied is not strictly speaking a warranty of quality, but merely that the seller shall deliver goods of the quality of the sample. To constitute a sale by sample so that a warranty will be implied it must appear that the parties contracted with

reference to the sample, with the understanding that the quality represented the quality of the bulk. The mere fact that a sample was exhibited at the time of sale does not make it a sale by sample so as to imply a warranty." [Gardiner v. Gray, 4 Camp. 144; 16 Rev. Rep. 764; Henry v. Talcott, 175 N. Y. 385; Couisenary v. Pearsall, 40 N. Y. Sup. Ct. 113; Gunther v. Atwell, 19 Md. 157.]

IV. Is a sale by sample shown by the evidence? Plaintiff asserts that it is. Having decided that the contract rested partly in writing and partly in parol, we must look to the whole testimony, the parol and the correspondence, to determine whether the proof establishes a sale by sample. It is evident plaintiff knew that defendant purchased these bags from a malting company and was offering to sell them just as they run for 11½ cents each; that defendant forwarded six average samples as requested, again offering to sell them for 11½ cents each as they run, defining, however, the words "as they run" to mean a guaranty that one-half would be free from holes, and one-half with small holes, requiring very little mending. Plaintiff stated in his wire of February 18th that he had received samples, inquiring if all bags were like samples. On the same day plaintiff wrote inquiring if defendant would sell the entire lot at a lower price, stating he might be able to take a chance on them. We do not think a sale by sample was shown by the correspondence.

The correspondence, however, did not contain all the evidence on that subject. Plaintiff testified that, during the long distance conversation in which the minds of the parties met as to the final terms of the agreement, he asked whether the entire lot would run like the samples he had received, and defendant replied that they would absolutely, that the samples sent were average samples. This is supported by plaintiff's letter of February 20th, in which it is said: "We understood in your

conversation over the 'phone that these bags will run about like the samples you sent us.'' The above testimony, if believed, constituted some evidence of a sale by sample to take the cause to the jury.

V. We think there is no doubt but that the evidence tended to show a warranty that 50% of the bags were sold free from holes, and 50% were to be good and mendable in accordance with the samples submitted. The evidence tended to show that 90 per cent of the 15,500 bags were badly torn and rat chewed, of which only 70 per cent of the torn and chewed bags were mendable.

Witness Roach testified that 1086 bags were according to sample; that 4142 bags might be considered like the sample, only having holes; that 1419 bags were without holes and patched, but were soiled and rough looking bags, showing wear, which the samples did not show; that 6342 bags were of a lower grade of sack, had holes, and were badly rat chewed; that 2671 were light bags, 12 or 14 ounce not seamless, and might be termed worthless; that all the others were 18 ounce bags. We think the evidence tends to show a breach of the above warranty.

VI. Defendant contends that the acceptance of the bags by plaintiff as his own and the sale to the Chase Bag Company cut off plaintiff's right to object to the quality, if such he had. The evidence tends to show that plaintiff notified defendant that he rejected the bags; that he held them subject to defendant's disposition, and that he asked the return of the purchase price with freight in the sum of $1787.69, stating that upon defendant's failure to return the same, plaintiff would dispose of these bags to the best possible advantage, giving credit on account, and look to defendant for the difference. Notwithstanding the notice, plaintiff disposed of the bags, failing to give defendant credit for the amount realized.

It is evident that plaintiff changed his mind about rescinding the contract, and elected to accept the bags upon defendant's refusing to accept the rescission. This put plaintiff in the situation of retaining and accepting the bags. We do not think that the above facts change the rule that, upon breach of warranty, the buyer may accept and retain the goods and recover damages for the breach of the warranty. [Laumeier v. Dolph, 145 Mo. App. 78, 130 S. W. 360; Brown v. Emerson, 66 Mo. App. 63.]

VII. Defendant contends, however, that the measure of damages is the difference between the value of the bags actually furnished to the buyer at the place of delivery and the value the bags would have had at the place of delivery if they had possessed the warranted qualities. His contention is that the bags were delivered f. o. b. cars Minneapolis, and that the measure of damages, under all the decisions, would be the difference between the value of the bags actually delivered at Minneapolis and the value of the bags that should have been delivered at Minneapolis in accordance with the alleged warranty. While plaintiff offered evidence tending to show the market value of the bags at St. Louis, the destination, he offered no evidence tending to show the market value of the bags at Minneapolis, nor is there any evidence or suggestion in the record as to what bags of the quality, which would comply with the alleged warranty, were worth in the market at Minneapolis, except the actual price of 11 cents. The authorities hold that even though plaintiff shows no substantial damages, yet where the evidence tends to show a breach of contract nominal damages are recoverable, necessitating the overruling of a demurrer to the evidence. [Boston v. Alexander, 185 Mo. App. 16, 171 S. W. 582; Wisconsin L. Co. v. Buscohm L. Co., 236 S. W. 416.]

VIII.   Defendant further contends that since the petition was framed on the theory that profits, on plaintiff's sale by sample to the Chase Bag Company, were recoverable, and since profits, as an element of damage, were not recoverable, and as plaintiff made a profit in reselling the bags, there was no proof of damage, and the nonsuit was properly ordered, citing Wilson v. Russler, 91 Mo. App. 275.

Plaintiff admits that the petition is not artistically drawn, but asserts that it contains the essential allegaions of an action to recover damages for breach of warranty, for it alleges, in substance, the bags were sold 50% free from holes, and 50% good and mendable in strict accordance with samples submitted; that 90% of the bags delivered were full of holes, not in accordance with the samples submitted, and that by reason of defendant's failure to carry out his contract plaintiff was damaged. While the petition states that at the time he purchased said bags he immediately sold them for a net profit of $1150.31, yet the petition further states that plaintiff by reason of the failure of defendant to carry out his contract, has been damaged in the sum of $2002.31, for which judgment is prayed.

Construing the petition, we do not consider it based on the theory of net profits, but think that it is grounded on a warranty that 50% of the bags were free from holes, with the remaining 50% good and mendable in strict accordance with samples submitted prior thereto. The allegation that plaintiff sold the bags for a net profit of $1150.31 is surplusage.

IX.   The evidence tends to show that defendant sold plaintiff the bags f. o. b. Minneapolis, sight draft attached to bill of lading. We think the measure of damages is the difference between the value of the bags actually furnished to the buyer at the place of delivery and the value the bags would have had at the place of delivery if they had possessed the warranted qualities.

[McCormick v. Heath, 65 Mo. App. 461.] Where, then, was the place of delivery?

In 24 R. C. L., page 45, sec. 308, it is said: ''Where the contract of sale is f. o. b. at point of initial shipment, delivery to the carrier is ordinarily deemed a delivery to the buyer so as to pass title to him.''

In 23 R. C. L., p. 1258, sec. 75, it is again said: ''Where the provision is f. o. b. at point of shipment the title will pass, as a general rule, when the property is placed on the cars for shipment.

In the case note of Hamilton v. J. Schlitz Brew. Co., 2 L. R. A. (N. S.) 1078, 129 Ia. 172, 105 N. W. 438, it is said: ''Since the intention of the parties is the ultimate criterion of the question whether or not the title passes upon the delivery of the goods by the seller to a common carrier, the fact that a draft for the purchase price is attached to the bill of lading is not necessarily decisive under any circumstances, but is of considerable importance under some circumstances as illustrating the intention of the parties. The fact of making the bill of lading deliverable to the order of the seller is of itself almost decisive, in the absence of evidence to the contrary, to show his intention to reserve the *jus disponendi,* and thus to prevent the title from passing to the purchaser at the time of delivery of the goods to the carrier. The attaching of a draft for the purchase price to such a bill of lading merely strengthens or corroborates the inference that it was not intended that the title shall pass, which, in the absence of countervailing circumstances, could be drawn without its aid from the form of the bill of lading.'' [See also case notes, 61 L. R. A. 420, and 44 L. R. A. (N. S.) 462.]

Here we have goods sold, sight draft attached to bill of lading, f. o. b. Minneapolis. Gathering the intention of the parties from the language used and considering the surrounding facts and circumstances as shown by the evidence, we are of the opinion that the words ''f. o. b. Minneapolis,'' were used merely to show

which party was to pay the freight, and that by the words "sight draft," or "sight draft attached to bill of lading," the title was not to pass until the sight draft was paid and the goods delivered to plaintiff at destination. It follows in this case that the place of delivery was St. Louis, and that the damages for breach of warranty are to be. estimated at the latter place. The question is not free from difficulty, but we so construe the contract. [Garner v. Railway, 79 Ark. 353, 96 S. W. 187, 116 A. S. R. 83.]

X. The remaining point, relating to plaintiff's right to file an amended petition, is not the subject of our consideration, because the record fails to preserve such petition.

The Commissioner recommends that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.